# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 12-12013 |
| | : | |
| **LOUISIANA RIVERBOAT GAMING** | : | Chapter 11 |
|   **PARTNERSHIP**, *et al.*[1] | : | |
| | : | **Jointly Administered** |
|   **DEBTORS** | : | |
| | : | |

| | | |
|---|---|---|
| **GLOBAL GAMING LEGENDS, LLC,** | : | **Adversary No. 13-01007** |
|   *et al.*[2] | : | |
| | : | |
| | : | **CONSOLIDATED WITH** |
| **VERSUS** | : | |
| | : | |
| | : | **Adversary No. 13-01008** |
| **LEGENDS GAMING OF LOUISIANA-1,** | : | |
|   **LLC,** *et al.* | : | |
| | : | |


## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

[1]     Legends Gaming of Louisiana-1, LLC (12-12014); Legends Gaming of Louisiana-2, LLC (12-12015); Legends Gaming, LLC (12-12017); Legends Gaming of Mississippi, LLC (12-12019); and Legends Gaming of Mississippi RV Park, LLC (12-12020) are being jointly administered with Louisiana Riverboat Gaming Partnership pursuant to order of this Court (the "Debtors") [Main Case, P-6].

[2]     Plaintiffs are Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Bossier City, LLC, purchasers under the APA (defined below), and Global Gaming Solutions, LLC (collectively with Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global Gaming Bossier City, LLC, "Global"), guarantor under the APA.

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................... - 1 -

II.    BACKGROUND ................................................................................. - 4 -

III.   ARGUMENT ....................................................................................... - 9 -

    A.   Legal Standard .......................................................................... - 9 -

    B.   Global has pled sufficient facts in the First Amended Complaint to state a claim to relief that is plausible on its face. ......................................... - 11 -

        1.   Breach of Contract ................................................................. - 11 -

        2.   Fraud ......................................................................................... - 15 -

    C.   The Debtors' argument that the disclaimers in the APA and Amendment bar Global's reliance on the Debtors' fraudulent misrepresentations is insufficient. .......................................... - 18 -

    D.   Global's fraud claim is not duplicative of its breach of contract claim. .... - 21 -

    E.   Global must be afforded the opportunity to complete discovery. .............. - 22 -

IV.   CONCLUSION ................................................................................. - 24 -

# TABLE OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................................................- 9 -

*Calhoun v. Hargrove*, 312 F.3d 730 (5th Cir. 2002) .................................- 9 -

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ............................................................................................- 9 -

*Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ..........................................................................................- 10 -

*Dannan Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) ...............................- 3 -, - 18 -, - 19 -, - 20 -

*Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (N.Y. 1986) ....................................................- 21 -, - 22 -

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) .................................- 9 -

*Doehla v. Wathne Ltd., Inc.,* No. 98 Civ. 6087, 1999 WL 566311, at *10 (S.D.N.Y. Aug.3, 1999) ..........................................................- 17 -

*Felton v. Walston & Co.*, 508 F.2d 577, 581 (2d Cir. 1974) ......................- 10 -

*First Bank of Ams. v Motor Car Funding*, 257 A.D.2d 287, 291-292 (N.Y. 1999) ........................................................................- 21 -

*GoSmile, Inc. v Levine*, 81 A.D.3d 77, 81 (N.Y. 2010) ............................- 21 -

*Great Lakes Dredge & Dock Co. LLC v. Louisiana State*, 624 F.3d 201 (5th Cir. 2010) ...........................................................................- 9 -

*Grumman Allied Indus. v. Rohr Indus., Inc.*, 748 F.2d 729 (2d Cir. 1984) ..........................................................................................- 19 -

*Houbigant, Inc. v. Deloitte & Touche, LLP*, 303 A.D.2d 92, 100 (1st Dep't 2003) ..................................................................- 15 -, - 16 -

*In re Chason*, 352 B.R. 52 (Bankr. W.D. La. 2005) ..................................- 23 -

*In re Initial Pub. Offering Sec. Litig.*, 241 F.Supp.2d 281, 326 (S.D.N.Y. 2003) .........................................................................- 10 -

*In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) .............................................................................- 10 -

*Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003) ......................- 15 -

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000)...........- 10 -

*Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997)......................................................................- 20 -

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ..........................- 10 -, - 17 -

*Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir. 1980)), cert.
denied, 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112
(1997) ..........................................................................................- 20 -

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287
(N.Y. App. Div. 1d 2011) .............................................................- 22 -

*Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir.
1993) ...........................................................................................- 19 -

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)......................- 10 -

*RIJ Pharm. Corp. v. Ivax Pharms., Inc.,* 322 F.Supp.2d 406, 412
(S.D.N.Y. 2004) ............................................................................- 11 -

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d
90 (1974) ......................................................................................- 9 -

*Selinger Enters., Inc. v Cassuto*, 50 A.D.3d 766, 768 (N.Y. 2008).........................- 21 -

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.
1994) ...........................................................................................- 10 -

*Todd v. Pearl Woods*, *Inc*., 20 A.D.2d 911 (2d Dep't 1964).....................................- 20 -

*Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th
Cir. 1994) .....................................................................................- 11 -

*Wexner v. First Manhattan Co*., 902 F.2d 169, 172 (2d Cir. 1990)............................- 11 -, - 23 -

*Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) .................................- 16 -

*WIT Holding Corp. v Klein*, 282 A.D.2d 527, 528 (N.Y. 2001)...............................- 21 -

## Statutes

11 U.S.C. § 727....................................................................................................- 23 -

## Rules

Fed. R. Civ. P. 12(b)(6)..........................................................................................- 9 -

Fed. R. Civ. P. 12(c) ................................................................- 1 -, - 9 -, - 18 -, - 23 -

Fed. R. Civ. P. 8(a) ...............................................................................................- 10 -

Fed. R. Civ. P. 9(b) ....................................................................- 10 -, - 11 -, - 15 -, - 23 -

iii

# I. INTRODUCTION

The Debtors move pursuant to Rule 12(c) [P-69] to dismiss Global's fraud and breach of contract claims on the basis that Global's allegations as set forth in the First Amended Complaint [P-49] ("Amended Complaint") fail as a matter of law. The Debtors' arguments are wrong and should be rejected.

The Amended Complaint makes detailed allegations of fraud and breach of contract with more than sufficient particularity as required by the Federal Rules of Civil Procedure. When taking Global's allegations as true, as this Court must, and when resolving all doubts and inferences in Global's favor, it is also clear that Global has alleged causes of action for fraud and breach of contract for which relief may be granted. The Debtors cannot show "beyond doubt" that Global will be unable to demonstrate any set of facts that would entitle it to the relief sought.

At the center of this dispute is that certain Asset Purchase Agreement dated July 25, 2012 (the "APA"), as amended by that certain First Amendment to Purchase Agreement dated November 29, 2012 (the "Amendment"), executed by and between Global and the Debtors. A critical component of the negotiations between Global and the Debtors in connection with the APA, as amended, concerned the Debtors' continuing obligation to operate their properties in the Ordinary Course of Business[3] and to, among other things, make the projected capital expenditures contained in their cash collateral budgets and operational budgets. The Debtors woefully failed to satisfy these obligations. Furthermore, and as specifically pled by Global in the First Amended Complaint [P-49],[4] the Debtors made misrepresentations of present material facts when it disclosed false financial projections during the APA and Amendment negotiations,

---

[3]      The "Ordinary Course of Business" is defined in Section 1.1 of the APA as the operation and conduct of the affairs of the Debtors in the ordinary course of business, *consistent with past practice.*

[4]      For the Court's convenience, Global has attached the First Amended Complaint to this Opposition as Exhibit 1.

- 1 -

upon which Global justifiably and reasonably relied in executing the Amendment. The Amendment, obtained through fraudulent misrepresentations to Global (these were also made to the Court and publicly) was the centerpiece of an amended plan ("Amended Plan") that from inception was not feasible, was not confirmable. The true state of the Debtor's financial circumstances and reasonably projected future financial and operations results doomed the Amended Plan. Within the Amended Complaint Global alleges with specificity (among other things) that the Debtors (i) knew their financial projections was false, (ii) continued to publish them, (iii) misrepresented both current and projected financial and operational conditions to Global (and to the Court), (iv) knew the Amended Plan was based upon false information, and (iv) knew the Amended Plan could not be confirmed (made clear by their decision to withdraw it and to repudiate the Amendment).

In its Motion to Dismiss [P-69], the Debtors suggest an alternative set of facts (contrary to what is required of a motion to dismiss—assuming all facts pled are true as pled), claiming that its Amended Plan was confirmable despite (i) the plan's obvious lack of feasibility as alleged by Global, (ii) the inability of the business to sustain itself post-confirmation, under the Amendment (as alleged by Global), and (iii) the Debtors' decision to withdraw the Plan rather than put Confirmation and feasibility to the test before this Court (as alleged by Global).

Further, the Debtors distort the factual record and omit key facts that are specifically pled by Global in the First Amended Complaint (all in contravention to the requirement that facts as alleged be assumed true). The Debtors' misinformation campaign is designed at least to distract, and more likely to fool the Court to hide its misdeeds (properly alleged), to hide its breach of contract (properly alleged), and to hide its repudiation of its own Amended Plan (properly alleged).

The financial performance of Debtors' business operations, as measured by earnings before interest, taxes and depreciation ("EBITDA") fell dramatically as compared against the Debtors' own projections during the last quarter of 2012 and would never have generated the financial performance necessary (and as represented by the Debtors) to allow Global to comply with the covenants and requirements of the acquisition financing. It was Global who exposed the Debtors' misrepresentations and breach, and it was the Debtors' tactical decision to withdraw the Plan thereby causing termination of the APA and rendering Global's performance impossible.[5]

In the face of these allegations, which this Court must accept as true, the Debtors suggest that Global's arguments fail as a matter of law based upon the disclaimers in the APA and the wording of the contract. The Debtors' arguments for dismissal fail because (1) Global has stated causes of action for fraud and breach of contract with sufficient particularity; (2) Global must be afforded the opportunity for discovery to prevent Debtors from concealing its fraud; (3) the APA disclaimers upon which the Debtors rely lack specificity and clarity to trigger the *Dannan* rule;[6] (4) the Debtors, not Global, possessed full familiarity with its financial condition and Global justifiably relied upon Debtors' superior knowledge; and (5) the Debtors' misrepresentations that induced Global to execute the APA and Amendment were collateral to the Debtors' breaches of the APA. The breach of contract claims are not duplicative of the fraud claim; the fraud claims are not duplicative of the breach of contract claims. Debtors' Motion to Dismiss should be denied.

---

[5]    This Court's confirmation of the Debtors' Plan (or of a Plan) was a condition precedent to closing the transaction contemplated by the APA. *See* APA §§ 7.1(d), 7.2(d).

[6]    See discussion of *Dannan Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) below (Section C of Argument, pp. 18-20 and following).

- 3 -

## II. BACKGROUND

The Debtors and Global executed the APA on July 25, 2012. Pursuant to the terms and conditions of the APA, Global deposited $6.25 million in escrow and the Debtors filed their chapter 11 petitions on July 31, 2012 [Main Case, P-1]. On August 23, 2012, the Court entered the Order (A) Approving Bidding Procedures; and (B) Granting Certain Bid Protections [Main Case, P-140]. Global was the stalking horse bidder for the Debtors' assets, and after a marketing and bidding period ended in September 2012, Global Gaming became the successful bidder. [Main Case, P-202]. On October 26, 2012, the Debtors filed the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as of October 26, 2012 [Main Case, P–248] (the "Original Plan") and Joint Disclosure Statement for Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as of October 26, 2012 [Main Case, P–249] (the "Disclosure Statement").

The Disclosure Statement did not include any financial projections because Global was concerned with the Debtors' financial information and the performance of the properties (that was not reflected in the Debtors' current financial projections) and was unwilling to support the current projections represented by the Debtors. At the time the Disclosure Statement was filed, Debtors were in breach of its APA obligations by failing to operate in the Ordinary Course of Business, and Global could have terminated the APA. Global instead believed that the APA could be salvaged, agreed to the Amendment and engaged in good faith discussions with the Debtors in an effort to save the transaction. (Global's First Amended Complaint, ¶8). Ultimately, these discussions resulted in the parties executing the Amendment on November 29, 2012, that included, among other things, the Debtors' representation and agreement to make required capital expenditures in the Ordinary Course of Business as contemplated by the APA. (Global's First Amended Complaint, ¶6).

- 4 -

Global and the Debtors specifically negotiated and incorporated in the APA, as amended, the Debtors' obligation to continue to operate their properties in the Ordinary Course of Business. (Global's First Amended Complaint, ¶7). The Debtors did not operate in the Ordinary Course of Business as required by the APA and Amendment because they failed to invest in necessary capital expenditures, and, further, failed to invest in even the most basic maintenance capital and operating expenses that is essential for a gaming operation and was required to run the Debtors' properties in the Ordinary Course of Business. *Id*. None of these failures were disclosed to Global when the Original Plan and Disclosure Statement were filed.

Furthermore, the Debtors made misrepresentations of present material facts when it disclosed false financial projections to Global. The Debtors had superior knowledge of their financial performance (and the requirements to meet such performance), generated forecasted EBITDA levels, and disclosed these financial projections to Global. Global relied upon Debtors' representations regarding its financial condition and corresponding feasibility of its proposed Original Plan.

On November 29, 2012, the Debtors also misrepresented its financial condition to the Court and other parties in the Joint Disclosure Statement for the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012 [Main Case, P–291] ("Amended Disclosure Statement"). At the same time, the Debtors filed the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012 ("Amended Plan") [Main Case, P–290] that was unfeasible because the financial projections contained within the Amended Disclosure Statement were materially false. Of course the Debtors did not so advise the Court that the business was unable to sustain itself post-confirmation.

- 5 -

The financial projections contained within the Amended Disclosure Statement were materially false, but of course the Debtors did not so advise the court. The Court approved the Amended Disclosure Statement, with the materially inaccurate projections, on December 6, 2012. [Main Case, P-300]. Subsequent to the execution of the Amendment and the filing of the Amended Disclosure Statement, the Debtors' disclosed financial statements for October and November of 2012 showing that they missed their EBITDA target by nearly 80%. (Global's First Amended Complaint, ¶¶ 9, 11-12), which caused the Amended Disclosure Statement projections for at least 2013 to be materially false. This false picture was known to the Debtors as of the filing of the Amended Disclosure Statement and as its approval by this Court. Moreover, instead of achieving EBITDA of $14.1 million for FY 2013 as projected in the Amended Disclosure Statement, the Debtors' projections, the reasonable projection, after adjustment for and to incorporate the correct information for the fourth quarter of 2012 projection, revealed that the Debtors could reasonably project to achieve EBITDA of only $8.78 million. [Declaration of John F. Cary, Main Case, P-313, Exhibit A]. Such results completely undermine the Debtors' assertion of feasibility, which is based solely upon the financial projections contained in the Amended Disclosure Statement. (Global's First Amended Complaint, ¶ 46).

The Debtors failure to make needed investments, combined with the lack of capital and maintenance expenditures, drove away the Debtors' customers and now explains the dramatic decline of the business operations throughout the fourth quarter of 2012 and into 2013 (and thereafter), a decline that was hidden from Global Gaming and this Court until after the Debtors filed its Amended Disclosure Statement. Global could not have and did not assume the risk of such a precipitous collapse when it was the Debtors who had superior knowledge of and

possession of the disastrous October and November financial information prior to execution of the Amendment and filing of the Amended Disclosure Statement. The failure to include actual results known to the Debtors for October and November, 2012, while using projections for such periods that were dramatically inconsistent with the actual results, constituted a material omission, rendering the Amended Disclosure Statement materially misleading. (Global's First Amended Complaint, ¶9).

On December 20, 2012, Global filed Global Gaming's Motion for Order Vacating Order Approving Joint Disclosure Statement for the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012 [Main Case, P-313] (the "Motion to Vacate"). The Motion to Vacate sought to vacate this Court's order approving the Amended Disclosure Statement on the grounds that the Amended Disclosure Statement contained materially inaccurate information concerning the Debtors' actual and projected financial performance for FY 2012 and beyond. This Court granted the Motion to Vacate, in part, and ordered the Debtors to serve a supplement (the "Supplement") to the Amended Disclosure Statement with, *inter alia*, actual EBITDA numbers for October and November.

At this point, the damage was done (the Amendment was signed; the Debtors appeared bent on pursuing confirmation of the non-feasible plan). Despite Global's good faith efforts to move forward with the APA after agreeing to the Amendment, the Debtors' monumental financial collapse ensured that the Debtors' own projections for the future financial performance (upon which feasibility of the Plan is based) were unattainable. On January 25, 2013, Global filed its Objection to the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012 [Dkt. No. 290], [Main Case, P-353] (the "Confirmation Objection"). Global's Confirmation Objection raised concerns regarding the

- 7 -

feasibility of the Amended Plan in light of the Debtors' failure to operate the property in the Ordinary Course of Business (as represented in the APA, as amended) and the attendant financial collapse in the fourth quarter of 2012 that was the harbinger of a disastrous 2013, all of which was known to the Debtors but misrepresented in the Amended Disclosure Statement.

Rather than proceed to confirmation, on January 30, 2013, the Debtors filed their Notice of Withdrawal of Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended through November 29, 2013.  [Main Case, P-360].  The Debtors knew that the Amended Plan was not feasible and knew that it had misrepresented the feasibility of its Amended Plan to Global (and the Court) in order to induce Global Gaming to execute the APA and Amendment.  Had the Debtors believed that the Plan was feasible, they could have and would have proceeded with confirmation.

Debtors' withdrawal of the Amended Plan rendered Global's performance pursuant to the terms of the APA impossible.   Confirmation of the Amended Plan was a prerequisite to closing the transaction contemplated by the APA and Debtors merely determined that their plan was not feasible and could not be confirmed.  On February 4, 2013, Global filed an Original Complaint for Declaratory Judgment against the Debtors commencing this adversary proceeding [P-1].  On May 24, 2013, Global filed the Amended Complaint [P-49] asserting claims for breach of contract and fraud.

In the Amended Complaint, Global contends that the Debtors breached the APA and that it is entitled to a declaration that the APA is terminated and the entirety of the $6.25 million escrow deposit must be returned to Global.  Further, when all the facts and circumstances are considered and after Global has been afforded an opportunity for discovery, Global will have to demonstrate that the Debtors made materially false representations with the specific intent to

induce Global Gaming to execute the APA and the Amendment, all of which is alleged with specificity in the Amended Complaint. As a result, Global suffered actual and consequential damages in the form of attorneys' fees, other professional fees and costs in dealing with this litigation and related filings in the captioned bankruptcy case

## III. ARGUMENT

### A.     Legal Standard

A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6). *Great Lakes Dredge & Dock Co. LLC v. Louisiana State*, 624 F.3d 201, 209-10 (5th Cir. 2010), citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). In deciding whether the complaint states a claim for relief, the Court *must accept* well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Though a complaint need not contain "detailed" factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citation omitted). Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Id*. at 570. Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)). Global's First Amended Complaint satisfies these pleading requirements and states a claim to relief for breach of contract and fraud that is plausible on its face.

- 9 -

Regarding Global's allegations of fraud, Rule 9(b) requires that "[i]n all averments of fraud...the circumstances constituting fraud...shall be stated with particularity." Here, Global has pled its fraud claims with sufficient particularity. Typically this pleading requirement is met when the complaint (1) specifies the statements that the plaintiff contends were fraudulent, (2) identifies the speaker, (3) states where and when the statements were made, and (4) explains why the statements were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). The particularity requirement may alternatively be met when the facts pled give rise to a "strong inference" of fraud. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Courts in the Second Circuit (and elsewhere[7]) have repeatedly emphasized that Rule 9(b) must be read in harmony with the principles established by Rule 8(a) that only a short and plain statement of the claim is required. *See*, *e.g*., *Felton v. Walston & Co*., 508 F.2d 577, 581 (2d Cir. 1974) ("[i]n applying Rule 9(b) we must not lose sight of the fact that it must be reconciled with Rule 8 which requires a short and concise statement of claims"); see also *In re Initial Pub. Offering Sec. Litig*., 241 F.Supp.2d 281, 326 (S.D.N.Y. 2003). In so reconciling these sometimes conflicting rules, the Second Circuit and other circuits have held that despite the particular pleading requirement, "allegations may be based on information and belief when facts are

---

[7] *In re Rockefeller Ctr. Props., Inc. Secs. Litig*., 311 F.3d 198, 216 (3d Cir. 2002); *Corley v. Rosewood Care Ctr*., 142 F.3d 1041, 1051 (7th Cir. 1998); *Koch v. Koch Indus., Inc*., 203 F.3d 1202, 1237 (10th Cir. 2000). Reference to the case law out of the Second Circuit is premised upon the applicability of New York law to the substantive causes of action asserted by Global (and by Legends) in these proceedings, as required by the APA and the Amendment. Global recognizes that the federal rules govern pleading requirements but applicable state substantive law is relevant in setting out the parameters of the causes of action pled.

- 10 -

peculiarly *within the opposing party's-knowledge*." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (emphasis added).

The purpose behind this is to allow courts to be sensitive to the risk that strict application of the particularity requirements of Rule 9(b) prior to discovery could permit sophisticated defrauders to conceal their fraud. *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir. 1994). It is also in recognition that Rule 9(b) should not be employed to require plaintiffs to plead facts to which they have no access prior to discovery.

**B. Global has pled sufficient facts in the First Amended Complaint to state a claim to relief that is plausible on its face.**

**1. Breach of Contract**

To maintain a claim for breach of contract under New York law,[8] plaintiff must plead: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *RIJ Pharm. Corp. v. Ivax Pharms., Inc.,* 322 F.Supp.2d 406, 412 (S.D.N.Y. 2004). Global has sufficiently pled all elements of a breach of contract claim under New York law. (Global's First Amended Complaint, ¶¶ 31-39). The Debtors' arguments that the breach of contract claim fail as a matter of law are based upon and utilize improper reading of the APA and the Amendment and mistake the facts as pled in Global's Amended Complaint, all of which must be accepted as true.

First, it is manifest that the Amended Complaint alleges that a contract existed between Global and the Debtors. Second, Global alleges that pursuant to Section 5.1(b) of the APA, the Debtors were required to continue to operate the Assets in the Ordinary Course of Business. Global further alleges that this requirement was a fundamental component and requirement of the APA and also a material inducement to Global to execute the APA, as amended. (Amended

---

[8] The parties agree that New York substantive law governs the causes of action making up these proceedings, as New York law is made applicable to the APA and the Amendment.

Complaint, ¶32).   Contrary to the Debtors' argument, Global's breach of contract claim is not simply predicated on the Debtors' failure "to make a minimum level of CapEx."   Rather, Global specifically alleges that the Debtors failed to operate the Assets in the Ordinary Course of Business as required by Section 5.1(b) of the APA, by, among other things, failing to make regular and necessary maintenance, marketing, and capital expenditures.   (Amended Complaint, ¶¶ 33-36).   Global further alleges that confirmation of a plan of reorganization was a prerequisite to closing the transaction contemplated by the APA, and Debtors' voluntary withdrawal of the Amended Plan rendered Global's performance pursuant to the terms of the APA impossible. (Amended Complaint, ¶¶ 33-36).

The Debtors' failure to operate in the Ordinary Course of Business constitutes a breach of the APA.   From the moment the APA was executed, the Debtors did not and never intended to operate the properties consistent with past practices.   As alleged by Global, the management of the Debtors business operations from July through October 2012 was dramatically different from what the Debtors represented and agreed to honor under the APA.   In October 2012, Global recognized that the Debtors' were not making the adequate capital expenditures, or expenditures consistent with information previously provided to Global and the Court, to keep the Debtors' Vicksburg and Bossier City properties viable, but could not know the depth to which the operations had plummeted given the Debtor's published and provided information asserting and projecting EBITDA of in excess of $14 million per year.   As further discussed below, discovery is currently on-going, and Global must be afforded an opportunity for discovery regarding Global's well pleaded allegations.   Discovery will demonstrate that the Debtors breached it obligations, concealed the breach and proposed an Amended Plan that was not feasible. (Global's First Amended Complaint, ¶¶ 37-39).

- 12 -

The Debtors also argue wrongly that the "Ordinary Course of Business" provision of the APA does not support Global's claim. The Debtors allege that the absence of any capital expenditure requirement from the terms of the APA somehow speaks volumes. But the language of the contract is clear with respect to the meaning of Ordinary Course of Business – that the Debtors would operate and conduct its affairs consistent with past practices. (Global's First Amended Complaint, ¶¶ 32). This language is not limiting and the intent of the parties could not be clearer. The Debtors agreed to operate the business consistent with past practices at all levels, including making minimum levels of capital expenditures consistent with the historical information provided to Global. However, the Debtors never intended to operate the business consistent with past practices. Instead, the Debtors did little to nothing to maintain the business thereby leading to the dramatic deterioration of the Debtors' business during the fourth quarter of 2012; a deterioration that admittedly took Global by surprise and constitute a breach of the APA.

The Debtors also suggest that the APA specifically lists its "Ordinary Course of Business" obligations in Section 5.1(b). This is not the case. Section 5.1(b) states:

Conduct of Business. From and after the date hereof until the Closing or earlier termination of this Agreement, the Legends Entities **shall conduct the Business in the Ordinary Course of Business and shall not**, except (i) as required or expressly permitted pursuant to the terms hereof, (ii) as required by any Applicable Law, (iii) as the Purchasers shall consent in writing (which consent shall not be unreasonably withheld, conditioned or delayed), (iv) in connection with the Bankruptcy Case, or (v) as may be approved by Order of the Bankruptcy Court, (A) enter into or terminate any material agreement or transaction other than in the Ordinary Course of Business, (B) transfer, sell, pledge or encumber any material Purchased Asset or LRGP Retained Asset other than in the Ordinary Course of Business, (C) with respect to the Purchased Assets and the LRGP Retained Assets, settle any suit or litigation or waive any material claims or rights of material value, or (D) fail to pay any undisputed trade obligation in accordance with its terms on or prior to the date such obligation becomes due. The Legends Entities shall maintain their books of account and records in the Ordinary Course of Business. Notwithstanding anything in this Agreement to the contrary, from and after the date hereof until the Closing or earlier termination of this Agreement, the Legends Entities shall not, without the prior written consent of the

- 13 -

Purchasers, enter into any Contract that would constitute a Material Contract if such Contract were in existence as of the date of this Agreement.

(APA Section 5.1(b), emphasis added). The plain meaning of the emphasized language makes clear that the conditions outlined in subparts (A) through (D) were intended to protect Global from any third party transactions and were not intended to define what constitutes the Debtors' non-compliance with the Ordinary Course of Business provision.

In fact, prior to listing specifically the enumerated actions that the Debtors shall not take, Section 5.1(b) explicitly states that the Debtors "shall conduct the Business in the Ordinary Course of Business," or in other words, consistent with past practices. This is an affirmative covenant. If the Debtors desired to limit their capital expenditure requirements to something other than what was reflected in their historical figures and/or budgetary figures, the Debtors, not Global, would have added specific language to the contract to that effect. Global agrees that there were no specific limitations on capital expenditures (except that the Debtors had to make capital expenditures consistent with past practices). It was Debtors' breach of the APA for failure to operate in the Ordinary Course of Business that led to the capital expenditure requirement set forth in the Amendment; a requirement that Global negotiated in good faith with the desire to salvage the APA.

The Amendment proved too late because the Debtors' complete disregard for its business operations had rendered the Amended Plan unconfirmable and not feasible, and as later revealed, rendered the Debtor's purported and false financial projections for 2012 and at least 2013 worthless misrepresentations. The APA no longer reflected the deal that Global had negotiated in good faith. The Plan had it been confirmed (which would not have occurred under applicable law and the true facts) would have resulted in an immediate return to Chapter 11 (a Chapter 33!) or Chapter 7 bankruptcy with either the DIP on Trustee proceeding against the Debtors and

- 14 -

lenders to avoid the transaction as (at least) constructively fraudulent. Clearly this Court would not have countenanced such a result. Faced with this certainty, the Debtors voluntarily withdrew the Amended Plan, repudiating the APA and Amendment.

Despite its efforts, Global was unable to reach any agreement with the Debtors to resolve the feasibility issues. The Debtors failure to operate in the Ordinary Course of Business and withdrawal of the Amended Plan rendered Global's performance impossible and constituted breaches of the APA, as amended. Global has been damaged by these breaches by having to file this adversary proceeding to seek the return of the $6.25 million escrow deposit. (Global's First Amended Complaint, ¶ 39).

Accordingly, Global has satisfied the pleading requirements to state a cause of action for breach of contract that is plausible on its face, and the Debtors' Motion to Dismiss should be denied.

### 2.    Fraud

Under New York law, "[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003).[9] Allegations regarding the knowledge of the other participants and their roles, and the state of mind of the participants can be alleged generally.[10] "Thus, while the actual ... fraud alleged must be stated with particularity ... the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great

---

[9]      *Cf., e.g., Houbigant, Inc. v. Deloitte & Touche, LLP*, 303 A.D.2d 92, 100 (1st Dep't 2003) ("[T]he plaintiff must only allege facts from which it may be inferred that the defendant was aware that its misrepresentations would be reasonably relied upon by the plaintiff, not that the defendant intended to induce the particular acts of detrimental reliance ultimately undertaken by the plaintiff.").

[10]     See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

specificity.... We apply the more general standard to scienter for the simple reason that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (quotations and citations omitted).[11]

Here, Global has pled its fraud claim with sufficient particularity. Global has identified that during the negotiation of the APA, the Debtors made material representations of present fact that were false when the Debtors represented to Global that its projected EBITDA for the properties for FY 2012 and FY 2013 would exceed $14.1 million. The Debtors also made false representations that it would continue to operate the businesses consistent with past practices to achieve the financial results that it represented were attainable. (Global's First Amended Complaint, ¶¶ 42). Global has also alleged that the Debtors knew that the financial projections for 2012 and after were false and unattainable because the Debtors did not (and never intended to) operate the properties as represented to Global. (Global's First Amended Complaint, ¶¶ 43-44). Finally, Global has alleged that Global actually and justifiably relied upon Debtors' representations when it executed the APA and Amendment, and instead of foregoing or terminating the APA as it had a right to do, was fraudulently induced into entering the transaction. (Global's First Amended Complaint, ¶¶ 41, 48-50).

Furthermore, the Debtors did not revise the false financial projections despite Global's concerns. (Global's First Amended Complaint, ¶ 43). The Debtors and their financial advisors affirmatively represented to Global that that the properties' performance was on track to achieve, and could achieve, $14.1M in EBITDA for 2012 and thereafter. These representations were

---

[11]     "The element of scienter, that is, the requirement that the defendant knew of the falsity of the representation being made to the plaintiff, is, of course, the element most likely to be within the sole knowledge of the defendant and least amenable to direct proof." *Houbigant*, 303 A.D.2d at 98.

false and the Debtors knew they were false when made. Global has sufficiently alleged  that the Debtors made further express misrepresentations and/or concealments of material facts to induce Global Gaming to also execute the Amendment by failing to revise its financial projections to reflect the plummeting EBITDA and to disclose to the Court and Global Gaming that projections for 2013-2015 were unreachable. (Global's First Amended Complaint, ¶ 45). The Debtors have not alleged that its representations were true or immaterial.

Likewise, the Debtors' argument that Global's First Amended Complaint fails to meet the Rule 9(b) particularity requirements is insufficient. (Motion to Dismiss at p. 14, n. 9). New York law recognizes that the particularity requirement may alternatively be met when the facts pled give rise to a "strong inference" of fraud. *Lerner,* 459 F.3d at 273. Global has met the particularity requirement by alleging facts that constitute both direct and circumstantial evidence, before and after the execution of the APA, that the Debtors actions were reckless because they knowingly provided false information to induce Global to execute the APA and Amendment.

It is manifest that Global was injured by the Debtors' fraudulent conduct and reckless behavior. Global has alleged that reliance on Debtors' misrepresentations caused injury to Global and deprived Global of its ability to acquire the Assets in the financial condition represented by the Debtors. (Global's First Amended Complaint, ¶ 45). Global has demonstrated reasonable reliance on Debtors' misrepresentations and Global must be afforded the opportunity to complete discovery and investigate the facts and circumstances of Debtors' misrepresentations and knowledge of such misrepresentations.[12] Instead, the Debtors seek to circumvent the discovery process in an effort to conceal its fraud and be unjustly enriched in the

---

[12] Proving reasonable reliance is a fact-specific inquiry "generally considered inappropriate for determination on a motion to dismiss." *Doehla v. Wathne Ltd., Inc.,* No. 98 Civ. 6087, 1999 WL 566311, at *10 (S.D.N.Y. Aug.3, 1999) (citing cases).

amount of the $6.25 million escrow deposit.[13]  The Court should not permit this to occur and the

Motion to Dismiss should be denied.

C.  **The Debtors' argument that the disclaimers in the APA and Amendment bar Global's reliance on the Debtors' fraudulent misrepresentations is insufficient.**

The Debtors' cite *Dannan Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959) for the

proposition that the disclaimers in the APA and Amendment negate any allegation of reliance by

Global as a matter of law.  Yet, the *Dannan* rule does not apply here and has been distinguished

by the Second Circuit in similar situations as the facts and circumstances of this adversary

proceeding.  The Debtors do not contend that any of its statements or representations were true

or immaterial; rather, the Debtors contend that Global could not have justifiably relied on the

representations because it was a sophisticated party that agreed to purchase the Debtors' assets

"as is." These arguments fail because the APA disclaimers contain generalized boilerplate

language that do not specifically disclaim the misrepresentations made by the Debtors prior to

Rule 12(c) the execution of the APA and the Amendment.  Also, the Debtors cannot prevail upon

a motion to dismiss by asserting facts not pled.

*Danann* was an action by the purchaser of a lease which claimed that it had contracted to

buy the lease in reliance on fraudulent misrepresentations by the seller as to the operating

expenses and profits of the building. The contract of sale provided that all prior agreements and

understandings were merged in the contract, that neither party relied upon any statements not set

forth therein, and that the seller had not made any representations as to the expenses or operation

of the premises. The New York Court of Appeals held that these *specific disclaimers* of

representations of the sort upon which the plaintiff allegedly relied precluded assertion of the

---

[13]      In fact, the Debtors have benefited from its withdrawal of the Amended Plan by negotiating a better deal
with the Lenders than was offered to Global.

fraud claim, although it observed that a general and vague merger clause would not have done so. *Danann*, 5 N.Y.2d at 320–21.

Additionally, the Court of Appeals for the Second Circuit has held that "a general merger clause is ineffective ... to preclude parol evidence that a party was induced to enter the contract by means of fraud." *Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993). "[E]ven when the contract contains 'an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made,' " a party may still assert that "he was induced to enter the contract by fraud." *Id*. (quoting *Danann*, 5 N.Y.2d at 320). An exception to this general rule arises, however, when "the contract states that a contracting party-disclaims the existence of or reliance upon specified representations." *Id*. In order to be considered sufficiently specific to bar a party's claim for fraud in the inducement, the contract language "must contain explicit disclaimers of the particular representations that form the basis of the fraud-in-the-inducement claim." *Id*. at 316 (citing *Grumman Allied Indus. v. Rohr Indus., Inc.*, 748 F.2d 729 (2d Cir. 1984)).

Here it cannot be said, as in *Danann*, that Global has "in the plainest language announced and stipulated that [they were] not relying on any representations as to the very matter [the Debtors' financial projections and condition of the properties] as to which [they] now [claim they were] defrauded." *Danann*, 5 N.Y.2d at 320. The APA disclaimers and merger clauses are not specific regarding the Debtors representations of financial performance and contain generalized boilerplate language that does not preclude Global's fraud claim.

There is also a question of fact whether Global had access to the true facts prior to entering into the contract—access of the type enjoyed in *Danann*. While Defendant and Global did meet on several occasions prior to the execution of the APA, there is a question of fact

whether Global enjoyed "unfettered" access to the true facts or was limited to gaining access to only what the Debtors and financial advisors provided. There is also a question of fact whether the access would have revealed the true nature of the Debtors' misrepresentations. The misrepresentations made by the Debtors were peculiarly within the Debtors' (and its financial advisors) knowledge and Debtors have not argued that the representations were true or immaterial.[14] In fact, Global has pled that it did not discover the fraudulent misrepresentations made by Legends until after approval of the Amended Disclosure Statement.

It is also not clear that the deteriorating financial condition of the Debtors' properties and the Debtors intent to cease operating in the Ordinary Course of Business could be determined simply by Global's inspection of the properties. Additionally, it is not clear if Global did in fact have the same financial information as the Debtors. (Motion to Dismiss, p. 19). Moreover, there were no contract provisions here, as there were in *Danann*, which specifically disavowed reliance or circumscribed the representations made. Nor was there any public information that would inform the true nature of the representations. In fact, the public information published by Legends was knowingly false.

Thus, the Debtors' argument that the disclaimers and merger clause precludes Global's justified reliance on the Debtors' representations fails.[15] Accordingly, the Motion to Dismiss should be denied.

---

[14]     "When matters are held to be peculiarly within defendant's knowledge, it is said plaintiff may rely without prosecuting an investigation, as he has no independent means for ascertaining the truth." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997) (quoting *Mallis v. Bankers Trust Co*., 615 F.2d 68, 80 (2d Cir. 1980)), cert. denied, 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997); see also *Todd v. Pearl Woods, Inc*., 20 A.D.2d 911 (2d Dep't 1964) (plaintiff justifiably relied on misrepresentations of facts "peculiarly within the knowledge of defendants" even though plaintiffs could have ascertained the truth through inspection of public records).

[15]     For the same reasons, the Debtors' argument that Global's reliance on the misrepresentations made regarding the Debtors' financial projections and in connection with the execution of the Amendment is not actionable also fails. Not only are the Debtors relying upon the same boilerplate language in the APA and Amendment, but the Debtors also rely upon the disclaimers set forth in the Amended Disclosure Statement. (Motion

**D.    Global's fraud claim is not duplicative of its breach of contract claim.**

Global agrees that under New York law, a fraud claim cannot be redundant of a breach of contract claim. Global disagrees that its fraud claim is duplicative or redundant of its breach of contract claim because the fraud claim is not predicated on the Debtors' intent not to perform its obligation to operate in the Ordinary Course of Business. Rather, Global's fraud claim is based upon the Debtors' misrepresentations of financial performance that were separate and apart from the Debtors' obligations under the APA, as amended.

Under New York law, a fraud claim will be upheld when a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, even though the same circumstances also give rise to the plaintiff's breach of contract claim. *First Bank of Ams. v Motor Car Funding*, 257 A.D.2d 287, 291-292 (N.Y. 1999). "Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract . . . and therefore involves a separate breach of duty." *Id.* at 292; *see also Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (N.Y. 1986); *GoSmile, Inc. v Levine*, 81 A.D.3d 77, 81 (N.Y. 2010); *Selinger Enters., Inc. v Cassuto*, 50 A.D.3d 766, 768 (N.Y. 2008); *WIT Holding Corp. v Klein*, 282 A.D.2d 527, 528 (N.Y. 2001). "A misrepresentation of material fact, [that] is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud." *WIT Holding Corp.*, 282 A.D.2d at 528.

---

to Dismiss, pp. 17-18). First, the financial projections attached the Amended Disclosure Statement were materially false, knowingly false, published by Legends and not endorsed by Global. Second, Global was a party to the APA and Amendment and the disclaimers contained within the Amended Disclosure Statement are not incorporated in or repeated in the APA or Amendment. If in fact the Debtors desired to include these specific disclaimers in the APA and Amendment, they would have done so. Finally, the disclaimers contained within the Amended Disclosure Statement, if read properly did not put Global or the Court on notice that representations and information was knowingly false. Legends supply did not and could not have disclaimed honesty.

Generally speaking, if a representation of material fact is made with a preconceived and undisclosed intention of never performing, such misstatement of material fact constitutes a misrepresentation upon which a fraudulent inducement claim may be predicated.[16] Here, Global has alleged that the Debtors made statements that it would continue to operate consistent with past practices to achieve the financial projections that the Debtors' and its financial advisors provided to Global. (Global's First Amended Complaint, ¶ 41). These statements were misstatements of present fact that were collateral to the APA and served as an inducement for Global to execute the APA. Global has further alleged that these misrepresentations continued through the execution of the Amendment and the submittal of the Amended Disclosure Statement. (Global's First Amended Complaint, ¶ 43-45). Upon Global learning of the misrepresentations (and after the Court ordered the Debtors to submit accurate information), the Debtors pulled the Amended Plan and sought to terminate the APA causing injury to Global.

Global's fraud allegations are separate and distinct from the Debtors' obligations under the APA; therefore, the Debtors' misstatements of material fact were collateral to the Debtors' breaches of the APA. Accordingly, the fraudulent inducement claim is not duplicative of the breach of contract claim, and Global must be permitted to maintain a separate claim for fraudulent inducement.

**E.     Global must be afforded the opportunity to complete discovery.**

As discussed herein, Global's Amended Complaint sets forth specific facts that make it reasonable to believe that the Debtors knew its statements regarding current and projected

---

[16]     The N.Y. Court of Appeals has held that a misrepresentation of present fact, unlike a misrepresentation of future intent to perform under the contract, is collateral to the contract, even though it may have induced the plaintiff to sign it, and therefore involves a separate breach of duty. *Deerfield Communications Corp.*, 68 N.Y.2d at 956. In *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287 (N.Y. App. Div. 1d 2011), the court determined that the plaintiff had stated a cause of action for fraudulent inducement because the complaint alleged "misrepresentations of present facts, and not future intent, made with the intent to induce" the plaintiff to insure Countrywide's securitizations.

financial performance made prior to the execution of both the APA and Amendment were materially false and misleading. Global has satisfied the pleading requirements necessary to give rise to a "strong inference" of fraudulent intent by the Debtors.[17]  Accordingly, the Motion to Dismiss must be denied to allow the discovery process to proceed and afford Global the opportunity for discovery regarding its well pled allegations.

Global's Amended Complaint provided adequate information for the Debtors to file an Answer [P-52], assert defenses, serve discovery requests and initially respond to Global's discovery requests.  Now, in the midst of discovery, the Debtors move to dismiss the Amended Complaint and preclude any discovery related to the feasibility of the Amended Plan.[18]  The Debtors are well aware of the accelerated discovery schedule and simply seek to delay (and forbid) discovery into the allegations of Global's Amended Complaint.  These tactics should not be permitted.

The Debtors' responses to Global's discovery requests have been inadequate and no supplemental production has been made since the original response deadline of July 26, 2013. Global is entitled to the Debtors' supplemental discovery responses, to conduct depositions of the Debtors' key witnesses, and to prove the allegations that have been sufficiently pled and

---

[17]     See *Wexner*, 902 F.2d at 172 (2d Cir. 1990) (requiring plaintiffs who allege fraud "to plead the factual basis which gives rise to a ' *strong inference* ' of fraudulent intent.") (citation omitted) (emphasis added).  The Debtor's reliance on *In re Chason*, 352 B.R. 52 (Bankr. W.D. La. 2005) for the proposition that Global has not satisfied the Rule 9(b) pleading requirements is unavailing.  In *Chason*, a Section 727 discharge complaint was filed that simply tracked the language of 11 U.S.C. § 727 and "[n]o evidence of materiality or intent to defraud was presented" to support the elements of a discharge complaint.  *Id*. at 61.  Furthermore, no discovery was conducted in the case and the Court specifically noted that "[i]n this case, there are simply *no* facts alleged in these pleadings."  *Id*. at 58. Accordingly, the Court granted the Rule 12(c) motion for failure of the plaintiff to satisfy the elements of a Section 727 complaint.  Those circumstances do not exist here.  As discussed and specifically identified herein, Global has not merely presented ornamental elements of fraud in its First Amended Complaint.  Global has satisfied the Rule 9(b) pleading requirements by filing a well-pled compliant presenting a strong inference of fraud and discovery is proceeding based upon such well-pled facts.

[18]     Contemporaneous with the Motion to Dismiss, the Debtors filed a Motion for Protective Order Precluding Discovery Concerning the Feasibility of the Debtors' Chapter 11 Plan of Reorganization [P-68].  Global opposes both.

answered by the Debtors. Accordingly, this Court should deny the Motion to Dismiss to afford Global the opportunity to complete discovery into the factual allegations of its First Amended Complaint.

## IV. CONCLUSION

For all the foregoing reasons, the Debtors' Motion to Dismiss must be denied.

Respectfully submitted,

**GORDON, ARATA, MCCOLLAM,**
  **DUPLANTIS & EAGAN, LLC**

By: **/s/ Louis M. Phillips**
Louis M. Phillips (La. Bar No. 10505)
Elizabeth A. Spurgeon (La. Bar No. 33455)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Phone: (225) 381-9643
Facsimile: (225) 336-9763
Email: lphillips@gordonarata.com
Email: espurgeon@gordonarata.com

- AND -

Steven W. Copley (La. Bar No. 16869)
Patrick ("Rick") M. Shelby (La. Bar No. 31963)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone:  (504) 582-1111
E-Mail:  SCopley@gordonarata.com
E-Mail:  PShelby@gordonarata.com

- AND -

**DENTONS US LLP**
C. Michael Moore (*pro hac* vice)
Gene R. Besen   (*pro hac* vice)
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:    (214) 259-0910
Email: mike.moore@snrdenton.com
Email: gene.besen@snrdenton.com

*Attorneys for Global Gaming Legends, LLC,*
*Global Gaming Vicksburg, LLC, Global Gaming*
*Solutions, LLC and Global Gaming Bossier City,*
*LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the parties listed below via email, on the 13th day of September, 2013.

William H. Patrick, III
Barry W. Miller
Tristan Manthey
HELLER, DRAPER, PATRICK & HORN, L.L.C.
605 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
(504) 229-3300 - *telephone*
(504) 299-3399 - *facsimile*
wpatrick@hellerdraper.com
bmiller@hellerdraper.com
tmanthey@hellerdraper.com

*Attorneys for Debtors*

Andrew K. Glenn
Olga L. Fuentes-Skinner
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
163 Broadway
New York, NY 10019
(212) 506-1700 - *telephone*
(504) 299-3399 - *facsimile*
ofuentes@kasowitz.com
aglenn@kasowitz.com

*Attorneys for Debtors*

S. Ault Hootsell III
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311 - *telephone*
(540) 568-9130 - *facsimile*
Ault.Hootsell@phelps.com

*Attorneys for Wilmington Trust Company and the Ad Hoc Group of Lenders*

Paul E. Harner
Michael J. Riela
Robert J. Malionek
LATHAM & WATKINS LLP
885 Third Ave.
New York, NY 10022
(212) 906-1200 - *telephone*
(212) 751-4864 - *facsimile*
Paul.Harner@lw.com
Michael.Riela@lw.com
Robert.Malionek@lw.com

*Attorneys for Wilmington Trust Company and the Ad Hoc Group of Lenders*

*/s/Louis M. Phillips*
Louis M. Phillips

- 26 -