# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| --------------------------------------------------x | | |
| In re | : | Case No. 12- 12013 |
| | : | |
| **LOUISIANA RIVERBOAT GAMING** | : | Chapter 11 |
| **PARTNERSHIP**, *et al.*[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| --------------------------------------------------x | | |

# JOINT CHAPTER 11 PLAN
## FOR LOUISIANA RIVERBOAT GAMING PARTNERSHIP AND AFFILIATES AS AMENDED THROUGH JUNE 24, 2013

HELLER, DRAPER, PATRICK
 & HORN, L.L.C.
William H. Patrick, III (La. Bar No. 10359)
Tristan E. Manthey (La. Bar No. 24539)
650 Poydras Street, 25th Floor
New Orleans, LA 70130-6103
Telephone: (504) 299-3300
Facsimile: (504) 299-3399

Counsel for Debtors and Debtors in Possession

---

[1] Legends Gaming of Louisiana-1, LLC (12-12014); Legends Gaming of Louisiana-2, LLC (12-12015); Legends Gaming, LLC (12-12017); Legends Gaming of Mississippi, LLC (12-12019); and Legends Gaming of Mississippi RV Park, LLC (12-12020) are being jointly administered with Louisiana Riverboat Gaming Partnership pursuant to order of this Court [P-6].

{00334581-1}

## **EXHIBITS**

Exhibit "A":   Retained Causes of Action

Louisiana Riverboat Gaming Partnership, Legends Gaming of Louisiana-1, LLC, Legends Gaming of Louisiana-2, LLC, Legends Gaming, LLC, Legends Gaming of Mississippi, LLC, and Legends Gaming of Mississippi RV Park, LLC, as debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), propose the following Joint Chapter 11 Plan with respect to each of their Chapter 11 Cases.

# ARTICLE 1

## DEFINITIONS AND CONSTRUCTION OF TERMS

Unless the context requires otherwise, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. Unless the context requires otherwise, the following words and phrases will have the meanings set forth below when used in the initially-capitalized form in this Plan: An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require. The words "in this Plan", "this Plan", "hereto", "hereof," "herein," or "hereunder" and other words of similar import, unless specifically stated otherwise, refer to the entirety of the Plan, and not to a particular section of the Plan. The words "Article," "section," "subsection," "clause" or "sentence" refer to particular provisions of the Plan and not to the entirety thereof. The word "including" (and with correlative meaning, the word "include") means including, without limiting or restricting the generality of any description preceding the word "including" or "include," and shall mean "including, but not limited to." The use of the word "any" shall mean "any and all," and the use of the word "all" shall also mean "any and all." The words "shall" and

1

"will" are used interchangeably and have the same meaning. Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in initially capitalized form in this Plan:

1.1 *"Administrative Expense Claim"* shall mean a Claim for any cost or expense of administration of any Debtor's Chapter 11 Case entitled to priority in accordance with the provisions of Sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) actual and necessary expenses of preserving the Estates and operating the Debtors' businesses (including, without limitation, the Cure Costs with respect to executory contracts and unexpired leases assumed by the Debtors pursuant to Section 365 of the Bankruptcy Code), (b) fees and expenses of Professionals to the extent allowed by a final order under Sections 328, 330 and 503 of the Bankruptcy Code, (c) fees and charges properly assessed against the Debtors in Possession under Section 1930 of title 28 of the United States Code, (d) all unpaid post-petition payments authorized and payable under the Final Cash Collateral Order; and (e) any personal injury claims or workers compensation claims that arose between the Petition Date and the Effective Date.

1.2 *"Allowed"* shall mean with respect to any Claim against or Interest in any Debtor, a Claim or Interest (a) proof of which is timely Filed (or by order of the Bankruptcy Court or as otherwise provided herein is not required to be Filed), (b) that is listed by such Debtor in its Schedules as liquidated in amount, non-disputed and non-contingent and for which no proof of claim has been Filed, or (c) expressly allowed pursuant to this Plan; and, in each case with respect to (a) and (b) above, either (i) no objection (or an amendment of the Schedules with respect thereto) to its allowance,

2

amount, or classification has been interposed within the applicable period for filing same fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such objection (or an amendment of the Schedules with respect thereto), if so interposed, has been determined and fixed by a Final Order (but only to the extent so determined and fixed and not where fixed and allowed solely for purposes of voting to accept or reject the Plan). Claims that are not Allowed or are disallowed by Final Order or otherwise, including those disallowed under Section 502(d) of the Bankruptcy Code, shall not be Allowed Claims.

1.3 *"Allowed Amount"* shall mean, with respect to each Claim:

(a) the dollar amount of an Allowed Claim as determined by a Final Order or as set forth in this Plan;

(b) in the event that no such determination of the Allowed Amount of a Claim is made pursuant to subsection (a), the dollar amount agreed to by the Claimant and the applicable Debtor or, after the Effective Date, the applicable Reorganized Debtor;

(c) in the event that no Allowed Amount is determined pursuant to clause (a) or agreed to pursuant clause (b) above, the amount estimated by a Final Order of the Bankruptcy Court for purposes of distribution pursuant to Section 502 of the Bankruptcy Code; or

(d) in the event that an Allowed Amount is not determined, agreed to or estimated pursuant to clauses (a), (b) or (c) above, the dollar amount as to which no objection to the allowance, amount or classification thereof has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.

Unless otherwise specified herein or in a Final Order, the Allowed Amount of any Claim shall not include interest accruing on such Claim from and after the Petition Date.

1.4 *"Allowed Claim"* shall mean a Claim to the extent that it has been Allowed.

{00334581-1}

1.5     "*Amended First Lien Credit Facility*" means an amended first lien credit facility in the principal amount of $80 million, the terms and conditions of which will be substantially similar to those set forth in a term sheet that will be filed with a Plan Supplement (but subject to definitive documentation), together with all agreements and other documents in any way relating thereto or in furtherance thereof.

1.6     "*Assets*" shall mean all property of the Debtors as defined in Section 541(a) of the Bankruptcy Code, including but not limited to, all of the Debtors' rights, title and interests in and to all immovable and real property and appurtenances thereto, improvements thereon, cash, deposits, telephone numbers, trade names, trade secrets, trademarks, copyrights, business "know how," goodwill, bank accounts of any and all types of any kind, tangible personal property, furniture, fixtures, equipment, machinery, inventory, general intangibles, general accounts, accounts receivable, intellectual property of all types and kinds, contract rights, licenses and permits, contracts and agreements, privileges of any and all kinds, and any and all other property and rights of the Debtors and their estates, including any and all Avoidance Claims, the Global Litigation and other Causes of Action and any and all defenses, which could be exercised by or on behalf of a Chapter 11 trustee or a debtor in possession.

1.7     "*Assumed Agreements*" means those particular executory contracts and unexpired leases that are assumed pursuant to Section 365 of the Bankruptcy Code, the Confirmation Order or other order of the Bankruptcy Court, as applicable.

1.8     "*Assumed Liability*" shall mean (a) the unpaid trade debt for goods delivered or services provided to the Debtors in the ordinary course of business prior to the Petition Date set forth on a schedule of assumed liabilities filed by the Debtors as part

{00334581-1}

of the Disclosure Statement, and (b) any Cure Costs. For the avoidance of doubt, the Debtors may add or delete any Assumed Liability, including changing any scheduled amount, from the schedule of assumed liabilities at any time prior to the Effective Date.

1.9 *"Avoidance Claim"* shall mean all rights, claims, causes of action, avoiding powers, suits and proceedings of or brought by or which may be asserted by a debtor in possession or a person under chapter 5 of the Bankruptcy Code, including by way of illustration and not limitation, under Sections 510, 541, 544, 547, 548, 549, 550, 553 and 554 of the Bankruptcy Code, together with any claims, rights, remedies or demands that may be asserted by a creditor or representative of creditors under similar applicable state or other laws, and claims in the nature of substantive consolidation, successor liability, veil piercing, or alter ego.

1.10 *"Bankruptcy Code"* shall mean title 11 of the United States Code, as amended from time to time.

1.11 *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division; having jurisdiction over the Chapter 11 Cases, or if such court ceases to exercise jurisdiction over the Chapter 11 Cases, such other court having jurisdiction under Title 28 of the United States Code over the Chapter 11 Cases.

1.12 *"Bankruptcy Rules"* shall mean the Federal Rules of Bankruptcy Procedure, the applicable Federal Rules of Civil Procedure, and the Local Rules of the Bankruptcy Court, in each case as amended from time to time during the Chapter 11 Cases.

{00334581-1}

1.13    *"Business"* means the gambling, gaming, hospitality, entertainment and related businesses of the Debtors, as conducted by the Debtors in Bossier City, Louisiana and Vicksburg, Mississippi.

1.14    *"Business Day"* shall mean any day that is not a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.15    *"Cash"* shall mean legal tender of the United States of America, cash equivalents, and readily marketable securities or instruments, including but not limited to, bank deposits, accounts, certified or cashiers checks, timed certificates of deposit issued by any bank, commercial paper, and readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof.

1.16    *"Causes of Action"* shall mean, without limitation, any and all of the Debtors' and the Estates' actions, causes of action, rights, suits, claims, accounts, debts, sums of money, damages, judgments, claims and demands, actions, defenses, offsets, powers (including all police, regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable, accruing to and in favor of the Debtors or Debtors in Possession pursuant to the Bankruptcy Code or any applicable statute or law or legal theory.  For avoidance of doubt, Causes of Action include, but are in no way limited to (a) rights of setoff, counterclaim or recoupment, and claims on

6

contracts or for breaches of duties imposed by law, (b) claims pursuant to Section 362 of the Bankruptcy Code, (c) such claims and defenses as fraud, mistake, duress, and usury, (d) all Avoidance Claims, (e) all Causes of Action that are assertable by or may be directly or derivatively asserted by the Debtors, their Estates, the Reorganized Debtors, or a representative of the Estate on behalf of creditors of the Debtors or the Estate, and (f) any and all claims of any and all types, and all recoveries thereon, in the Global Litigation.

1.17    *"Chapter 11 Cases"* shall mean the chapter 11 cases of the Debtors pending before the Bankruptcy Court.

1.18    *"Claim"* shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.19    *"Claimant"* or *"Creditor"* shall mean the holder of a Claim, together with any predecessor or successor in interest with respect to such Claim.

1.20    *"Class"* shall mean any group of Claims or Interests classified together by this Plan pursuant to Section 1122 of the Bankruptcy Code.

1.21    *"Common Interests"* shall mean all of the common units in Legends Gaming.

1.22    *"Confirmation Date"* shall mean the date of entry on the docket of the Bankruptcy Court of the Confirmation Order.

1.23    *"Confirmation Hearing"* shall mean the hearing before the Bankruptcy Court regarding confirmation of this Plan and related matters under Section 1128 of the Bankruptcy Code.

{00334581-1}

1.24    *"Confirmation Order"* shall mean the order signed by the Bankruptcy Court confirming this Plan.

1.25    *"Consenting First Lien Lender"* shall mean any First Lien Lender who submits a vote to accept this Plan by the voting deadline, provided that such accepting vote is not later withdrawn or modified.

1.26    *"Consenting Second Lien Lender"* shall mean any Second Lien Lender who submits a vote to accept this Plan by the voting deadline, provided that such accepting vote is not later withdrawn or modified.

1.27    *"Cook Employment Agreement"* has the meaning given to it in <u>section 5.4</u> of this Plan.

1.28    *"Cramdown"* shall mean the confirmation of this Plan pursuant to 11 U.S.C. § 1129(b) notwithstanding any rejection by an Impaired Class or Classes of holders of Claims or Interests of this Plan.

1.29    *"Cure Costs"* means any and all costs, expenses or actions that the Reorganized Debtors are required to pay or perform to assume and/ or assume and assign any of the Assumed Agreements pursuant to <u>Section</u> 365(f) of the Bankruptcy Code.

1.30    *"Cure Dispute"* has the meaning given to it in <u>section 5.3(d)</u> of this Plan.

1.31    *"Cure Dispute Hearing"* has the meaning given to it in <u>section 5.3(d)</u> of this Plan.

1.32    *"Cure Notice"* has the meaning given to it in <u>section 5.3(a)</u> of this Plan.

1.33    *"Debtors"* shall mean Louisiana Riverboat Gaming Partnership, Legends Gaming of Louisiana-1, LLC, Legends Gaming of Louisiana-2, LLC, Legends Gaming,

{00334581-1}

LLC, Legends Gaming of Mississippi, LLC, and Legends Gaming of Mississippi RV Park, LLC, collectively.

1.34    *"Debtor in Possession or Debtors in Possession"* shall mean the Debtors between the Petition Date and the Effective Date.

1.35    *"Disclosure Statement"* means the Disclosure Statement Filed in connection with the Plan, as modified or amended, approved by the Bankruptcy Court on May 10, 2013 [P-463].

1.36    *"Disputed Claim"* shall mean any Claim that is not an Allowed Claim.  In the event that any portion of a Claim is not an Allowed Claim, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan until entry of a Final Order fixing and determining the Allowed Amount thereof. Without limiting any of the foregoing, a Claim that is the subject of or part of a pending objection, motion, complaint, counterclaim, setoff, recoupment, Avoidance Claim, litigation claim or defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed a Disputed Claim, unless the Plan or the Confirmation Order expressly provides otherwise.

1.37    *"Disputed Claims Reserve"* shall mean the reserve established pursuant to section 8.3 of the Plan with respect to Disputed Claims.

1.38    *"Distribution Date"* shall mean each date any payment of Cash or distribution of Assets is due to the holders of Allowed Claims or Allowed Interests under this Plan.

1.39    *"Effective Date"* shall mean a Business Day on which all of the conditions precedent to the effectiveness of the Plan specified in the Plan have been satisfied or

{00334581-1}

waived in accordance with the Plan and which is specified as the "Effective Date" in the notice of occurrence of the Effective Date Filed in the record of the Bankruptcy Court pursuant to section 10.2 of the Plan.

1.40    *"Encumbrances"* means all mortgages, pledges, charges, liens, debentures, trust deeds, claims, assignments by way of security or otherwise, security interests, conditional sales contracts or other title retention agreements or similar interests or instruments charging, or creating a security interest in the Assets or any part thereof or interest therein, and any agreements, leases, licenses, occupancy agreements, options, easements, rights of way, restrictions, executions or other encumbrances affecting title to the Assets or any part thereof or interest therein.

1.41    *"Entity"* shall mean an individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code) or any political subdivision thereof, or other person.

1.42    *"Estate"* shall mean the estate of each Debtor, as defined in Section 541 of the Bankruptcy Code.

1.43    *"Existing First Lien Credit Facility"* means that certain Amended and Restated Credit Agreement, dated as of August 31, 2009, among Legends Gaming, LLC as borrower, the First Lien Agent, and the First Lien Lenders, as it may have been amended, supplemented or otherwise modified from time to time, together with all agreements and other documents in any way relating thereto or in furtherance thereof.

1.44    *"Existing Second Lien Credit Facility"* means that certain Amended and Restated Second Lien Credit Agreement, dated as of August 31, 2009, among Legends

{00334581-1}

Gaming, LLC, as borrower, the Second Lien Agent, and the Second Lien Lenders, as it may have been amended, supplemented or otherwise modified from time to time, together with all agreements and other documents in any way relating thereto or in furtherance thereof.

1.45    *"FGG"* shall mean Foundation Gaming Group, LLC.

1.46    *"File"* or *"Filed"* means properly filed with the clerk of court of the Bankruptcy Court in the Chapter 11 Cases, as reflected on the official docket of the clerk of court of the Bankruptcy Court for the Chapter 11 Cases.

1.47    *"Final Cash Collateral Order"* means the Final Cash Collateral Order Pursuant to Sections 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001; (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; (3) Modifying the Automatic Stay; and (4) Providing Related Relief [P-193], together with any modification, renewal or extension thereof.

1.48    *"Final Order"* means (i) with respect to the Confirmation Order, an order entered by the Bankruptcy Court or other court of competent jurisdiction (a) that has not been reversed, modified or withdrawn and that remains in full force and effect, and (b) that is not the subject of a stay, and (ii) with respect to any other order, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (a) which has become final for purposes of 28 U.S.C. § 158 or such analogous law or rule in the case of an order of a state court and (b)(i) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been

{00334581-1}

waived in writing in form and substance satisfactory to the Debtors (or, if after the Effective Date, by the Reorganized Debtors) or, (ii) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, (x) such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed with no modifications thereof, or (y) certiorari, reargument or rehearing has been denied, and (z) the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired with no such further appeal, petition for certiorari or motion for reargument or rehearing having been sought or pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 or other analogous rules of state courts governing procedures in cases before other courts may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

1.49    *"First Lien Ad Hoc Group"* shall mean the Ad Hoc Group of First Lien Lenders.

1.50    *"First Lien Agent"* shall mean Wilmington Trust Company or any successor thereto, solely in its capacity as the administrative and/or collateral agent for the First Lien Lenders.

1.51    *"First Lien Lenders"* shall mean the lenders from time to time party to the Existing First Lien Credit Facility.

1.52    *"First Lien Lenders' Secured Claims"* shall mean (a) the Secured Claims of the First Lien Lenders in respect of, in connection with, or arising out of the Existing First Lien Credit Facility in the aggregate Allowed amount of approximately

12

$181,182,013.83 as of the Petition Date, (which amount includes matured and unpaid interest thereon as of the Petition Date) and (b) any and all other unpaid fees, expenses, disbursements, indemnifications, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Existing First Lien Credit Facility, related agreements and documents, or applicable law.

1.53 *"Gaming Regulators"* shall mean the Louisiana Gaming Control Board, the Mississippi Gaming Commission and the Colorado Division of Gaming, as applicable.

1.54 *"General Unsecured Claim"* means any Claim that is not an Administrative Claim, Priority Claim, Secured Claim, Assumed Liability or a Claim otherwise specifically classified in another Class in this Plan. The term "*General Unsecured Claim*" also includes the deficiency claims of the First Lien Lenders and the Second Lien Lenders and, as applicable, the deficiency claims of certain holders of Other Secured Claims.

1.55 *"Global Gaming"* shall mean Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Bossier City, LLC, and Global Gaming Solutions, LLC.

1.56 *"Global Litigation"* shall mean any and all litigation between the Debtors (and, after the Effective Date, the Reorganized Debtors) and Global Gaming, including but not limited to those claims and Causes of Action set forth by the Debtors in the adversary proceeding entitled *Louisiana Riverboat Gaming Partnership, et al. v. Global Gaming Legends, LLC*, Adv. Proc. No. 13-01008 and the counterclaim by the Debtors in

13

the adversary proceeding entitled *Global Gaming Legends, LLC, et al. v. Legends Gaming of Louisiana-1, LLC, et al.*, Adv. Proc. No. 13-01007.

1.57    *"Governmental Authority"* shall mean any domestic, foreign or local government, quasi-governmental authority, regulatory authority, government department, agency, commission, board, or other tribunal or court.

1.58    *"Impaired"* shall mean, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of Section 1124 of the Bankruptcy Code.

1.59    *"Interests"* shall mean, collectively, any and all "equity securities" (as defined in Section 101(16) of the Bankruptcy Code) in a Debtor, and includes both Common Interests and Preferred Interests.

1.60    *"Intercompany Claim"* shall mean any Claim against a Debtor held by another Debtor.

1.61    *"Legends Gaming"* shall mean Legends Gaming, LLC, a Delaware limited liability company.

1.62    *"Legends LA-1"* shall mean, Legends Gaming of Louisiana-1, LLC, a Louisiana limited liability company.

1.63    *"Legends LA-2* shall mean Legends Gaming of Louisiana-2, LLC, a Louisiana limited liability company.

1.64    *"Legends MS"* shall mean Legends Gaming of Mississippi, LLC, a Mississippi limited liability company.

1.65    *"Liability"* means any debt, obligation or liability of any nature, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due.

14

1.66    *"Lien"* shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.67    *"LRGP Partnership Interests*" shall mean all of the issued and outstanding partnership interests of Riverboat Gaming.

1.68    *"New Interest Holder*" shall mean the person or entity that is identified in a Plan Supplement to be issued and hold the New Interests issued on the Effective Date of the Plan.

1.69    *"New Interests"* shall mean the new common membership interests in Legends Gaming which shall be issued to the New Interest Holder on the Effective Date.

1.70    *"New Management Agreement"* has the meaning given to it in <u>section 7.1(a)</u> of this Plan.

1.71    *"Option*" shall mean the option of the lenders under the Amended First Lien Credit Facility or their designee(s) to obtain 100% of the New Interests at any time after the Effective Date.

1.72    *"Other Secured Claim"* shall mean a Secured Claim against any Debtor, other than Secured Tax Claims, the First Lien Lenders' Secured Claims, and the Second Lien Lenders' Secured Claims.

1.73    *"Person"* means an individual, partnership, limited liability company, corporation, trust, unincorporated organization, government, or any department or agency thereof, and the successors and assigns thereof or the heirs, executors, administrators or other legal representatives of an individual.

1.74    *"Petition Date"* shall mean July 31, 2012.

15

1.75    *"Plan"* shall mean this Joint Chapter 11 Plan in its present form or as it may, from time to time, be modified, amended or supplemented in accordance with the terms hereof, together with any exhibits thereto.

1.76    *"Plan Supplement"* shall mean the supplement(s) to the Plan as specified herein, and any amendments or supplements thereto (which may be in the form of term sheets, draft forms of agreements, or similar summary documentation). A Plan Supplement containing such information and documents as is then available or known shall be filed prior to the Confirmation Hearing.

1.77    *"Plan Support Agreement"* shall mean the agreement dated as of July 25, 2012 entitled Restructuring and Plan Support Agreement by and among the Debtors, except Legends Gaming RV, and the lenders party thereto.

1.78    *"Preferred Interests"* shall mean all of the Preferred Units of Legends Gaming.

1.79    *"Priority Claim"* shall mean any Claim entitled to priority pursuant to Section 507(a)(1), (a)(4), (a)(5), (a)(6), or (a)(7) of the Bankruptcy Code, other than Priority Tax Claims.

1.80    *"Priority Tax Claim"* shall mean any Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.81    *"Professional"* shall mean any professional (a) retained by the Debtors in the Chapter 11 Cases and (b) to be compensated pursuant to Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

1.82    *"Rejection Damages Claims"* means Claims alleged to arise from the rejection of an executory contract or unexpired lease.

{00334581-1}

1.83    *"Released Parties"* shall mean (i) the Debtors, Debtors in Possession and Reorganized Debtors, and their respective financial advisors, attorneys and accountants whose retention has been approved by the Bankruptcy Court, and all past, present and future officers, directors, servants, shareholders, members, managers, partners, employees, agents, representatives and consultants thereof, including Michael E. Kelly; and (ii) the Consenting First Lien Lenders, the First Lien Agent, the First Lien Ad Hoc Group, the Consenting Second Lien Lenders, the Second Lien Agent, and each of their respective divisions, affiliates, and their former, present and future officers, directors, servants, shareholders, members, affiliates, managers, partners, employees, agents, representatives, professionals and consultants.   Notwithstanding any other term or provision of this Plan, Global Gaming shall not be a Released Party.

1.84    *"Reorganized Debtors"* shall mean the Debtors from and after the Effective Date.

1.85    *"Riverboat Gaming"* shall mean Louisiana Riverboat Gaming Partnership, a Louisiana general partnership.

1.86    *"Schedules"* shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Confirmation Date.

1.87    *"Second Lien Agent"* shall mean Wells Fargo Bank, N.A., or any subsequent successor thereto, solely in its capacity as the administrative and/or collateral agent for the Second Lien Lenders.

17

1.88    *"Second Lien Lenders"* shall mean the lenders from time to time party to the Existing Second Lien Credit Facility.

1.89    *"Second Lien Lenders' Secured Claims"* shall mean (a) the Secured Claims of the Second Lien Lenders in respect of, in connection with, or arising out of the Second Lien Loan Documents in the aggregate Allowed Amount of approximately $116,252,898.38 (which amount includes matured and unpaid interest thereon as of the Petition Date) and (y) any and all other unpaid fees, expenses, disbursements, indemnifications, and charges or claims of whatever nature, whether or not contingent, whenever arising, due or owing under the Existing Second Lien Credit Facility, related agreements and documents, or applicable law.

1.90    *"Secured Claim"* shall mean any Allowed Claim of any Claimant secured by a Lien on the Debtors' interest in any Assets as set forth in the Plan or as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code.

1.91    *"Secured Tax Claim"* shall mean any Claim in favor of a federal, state, parish, county, local, or special governmental taxing authority, whether or not entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code, that is secured by a lien or other security interest on any Assets of the Debtors.

1.92    *"Securities Act"* means the Securities Act of 1933, as amended from time to time.

1.93    *"Tax"* or *"Taxes"* means any federal, state, local or foreign net income, gross income, gross receipts, windfall profit, severance, property, production, sales, use, license, excise, franchise, employment, payroll, withholding, alternative or add on minimum, ad valorem, value added, transfer, stamp, or environmental tax, escheat

18

payments or any other tax, custom, duty, governmental fee or other like assessment or charge (together with any and all interest, penalties and additions to tax imposed with respect thereto).

1.94 *"Transaction Fees"* shall mean (1) the cash fee payable by Legends Gaming, LLC to Houlihan Lokey Capital, Inc. upon the consummation of a Transaction (as defined in, and subject to the terms of, that certain engagement letter dated as of March 29, 2012, among Houlihan Lokey Capital, Inc., Latham & Watkins LLP, and Legends Gaming, LLC); and (2) the cash fee (reduced to the sum of $750,000) payable by Legends Gaming, LLC to Seaport Group Securities, LLC upon the consummation of a Transaction (as defined in, and subject to the terms of, that certain engagement letter dated as of December 16, 2011, as amended, among Seaport Group Securities, LLC and Legends Gaming, LLC).

1.95 *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.

# ARTICLE 2

## PROVISIONS FOR PAYMENT OF
## ADMINISTRATIVE EXPENSES

**2.1** *Payment of Allowed Administrative Expense Claims*.

2.1.1 *Allowed Administrative Expense Claims.*

Subject to section 2.1.2 below, to the extent Allowed Administrative Expense Claims are not otherwise paid during the Chapter 11 Cases, each Allowed Administrative Expense Claim (other than any Allowed Administrative Expense Claims for ad valorem taxes which shall be paid in thirty-six (36) consecutive equal monthly

19

installments with such monthly payments beginning in the third calendar month following the occurrence of the Effective Date and continuing thereafter until paid in full, with interest at such rate as required by Section 511 of the Bankruptcy Code, in an aggregate amount equal to such Allowed Administrative Expense Claim) shall be paid (x) in full, in Cash, by the Debtors on the Effective Date or as soon practicable thereafter; or (y) in accordance with the terms of the underlying Allowed Administrative Expense Claim; or (z) upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Debtors or, as applicable, the Reorganized Debtors or otherwise established pursuant to an order of the Bankruptcy Court; *provided, however,* that Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any Debtor in Possession shall be paid by the applicable Debtor in accordance with the terms and conditions of the particular transactions, the applicable non-bankruptcy law, and any agreements relating thereto or any order of the Bankruptcy Court. For the avoidance of doubt, all unpaid post-petition amounts authorized and payable under the Final Cash Collateral Order shall be deemed to be Allowed Administrative Expense Claims under this Plan. Pursuant to subsection 2.1.1(z) above, the Transaction Fees due to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC, respectively, shall be paid in equal monthly installments of $100,000 to each such advisor (i.e., a total of $200,000 per month) with payments commencing on the first Business Day of the month following the occurrence of the Effective Date and continuing on the first Business Day of each month thereafter through December 1, 2013, in the amount of $100,000 per month to Seaport and $100,000 per month to Houlihan Lokey, with any residual amounts owed to Seaport and Houlihan

{00334581-1}

Lokey, respectively, being paid in full by the Reorganized Debtors by December 20, 2013.

### 2.1.2 *Compensation of Professionals of Debtors.*

All Professionals of the Debtors who seek compensation or who have been compensated from the estates of the Debtors in Possession during the Chapter 11 Cases, or who seek compensation from the estates of the Debtors in Possession for services rendered or reimbursement of expenses incurred from the Petition Date through and including the Effective Date, pursuant to Sections 327, 328, 330, or 503(b) of the Bankruptcy Code, shall (a) File final applications for allowance of compensation for services and reimbursement of expenses incurred from the Petition Date through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date, and (b) if granted such an award by the Bankruptcy Court, be paid in full by the Debtors or, as applicable, the Reorganized Debtors or as otherwise provided in this Plan in such amounts as are Allowed by the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, or (ii) when mutually agreed upon by such holder of an Administrative Expense Claim and the Reorganized Debtors. For the avoidance of doubt, no professional retained or employed by or for the benefit of the First Lien Agent or the First Lien Ad Hoc Group shall be required to File any motion or application for allowance or payment of any of its fees and expenses.

### 2.1.3 *Substantial Contribution Claims; Deadline for Filing.*

To the extent any Entity seeks payment or reimbursement of compensation for services rendered or reimbursement of expenses incurred in connection with or during the

{00334581-1}

Chapter 11 Cases under Section 503(b)(3)(D) of the Bankruptcy Code, such Entity shall File its application or request for such payment on or before the deadline established by the Bankruptcy Court for the filing of the objections to the confirmation of the Plan, and any such application or request shall be heard and determined at the Confirmation Hearing; otherwise, any such application or request for compensation or reimbursement of expenses under Section 503(b)(3)(D) shall be forever barred from assertion against the Debtors, their respective Estates, and the Reorganized Debtors, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof.

To the extent not already paid by the Effective Date, the Second Lien Agent, any Second Lien Lender and any of their respective counsel, advisors, agents and professionals shall be entitled to receive only the amount that has already been specifically authorized by the Final Cash Collateral Order (*i.e.*, a total of $40,000 for the Second Lien Agent), and shall have no other Administrative Expense Claim or Substantial Contribution Claim.

2.1.4  *Bar Date for Filing Administrative Expense Claims*.  Except with respect to any Administrative Expense Claims (a) that are Allowed under this Plan or payable pursuant to an order of the Bankruptcy Court or (b) for which a different deadline is established by this Article 2, Administrative Expense Claims must be Filed in the form of an application or request no later than thirty (30) days after the Confirmation Date, and such application or request shall specify the bases for the Administrative Expense Claim and why the holder of the Administrative Expense Claim is entitled to priority under Sections 503(b), 507(b) or 1114(e)(2). Otherwise, any such Administrative

22

Expense Claim is and shall be deemed to be forever barred and unenforceable against the Debtors, their respective Estates, their Assets and the Reorganized Debtors, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof.

2.1.5  *Bar Date for Internal Revenue Service to File Administrative Expense Claims; Section 505(b) Request*

For any federal income, payroll, and/or excise tax that may be due by the Debtors for all taxable periods from the Petition Date through the Effective Date, the Bar Date for the Internal Revenue Service ("IRS") to file Administrative Expense Claims shall be the earlier of: (1) in the event the Reorganized Debtors file a request with the IRS for determination of any unpaid liability of the Estates for any such tax incurred from the Petition Date through the Effective Date pursuant to Section 505(b)(2) of the Bankruptcy Code, ninety days (90) days after the date of filing the request with the IRS (A) if the IRS does not notify the Reorganized Debtors within sixty (60) days of such request for determination that such return has been selected for examination; or (B) if the IRS does timely notify the Reorganized Debtors within 60 days of such request for determination that such return has been selected for examination, thirty (30) days after the deadline for the timely completion of any such examination pursuant to Section 505(b)(2)(A)(ii), or (2) ninety (90) days after the Reorganized Debtors' filing of any such return, in the event the Reorganized Debtors do not file a request with the IRS for determination of any unpaid liability of the Estates pursuant to Section 505(b)(2). The Reorganized Debtors may file an objection to any such Administrative Expense Claim of the IRS no later than

{00334581-1}

ninety (90) days following the date of filing the Administrative Expense Claim by the IRS.

# ARTICLE 3

# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**3.1** *Class 1. Priority Tax Claims.*

3.1.1 *Classification.*

Class 1 consists of all Allowed Priority Tax Claims.

3.1.2 *Treatment*

Each holder of an Allowed Priority Tax Claim that has not otherwise been satisfied during the Chapter 11 Cases shall be paid the Allowed Amount of such Allowed Priority Tax Claim, at the option of the Reorganized Debtors and the First Lien Ad Hoc Group: (x) in full, in Cash, by the Reorganized Debtors on the Effective Date; or (y) in accordance with the terms of the underlying Allowed Priority Tax Claim; or (z) in thirty-six (36) consecutive equal monthly installments with such monthly payments beginning in the third calendar month following the occurrence of the Effective Date, with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code in an aggregate amount equal to such Allowed Priority Tax Claim.

3.1.3 *Impairment and Voting.*

Class 1 is Impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

{00334581-1}

**3.2**     *Class 2. Priority Claims*.

    3.2.1    *Classification*.

Class 2 consists of all Allowed Priority Claims.

    3.2.2    *Treatment*.

Each holder of an Allowed Priority Claim that has not otherwise been satisfied during the Chapter 11 Cases shall be paid the Allowed Amount of such Allowed Priority Claim, at the option of the Reorganized Debtors and the First Lien Ad Hoc Group: (x) in full, in Cash, by the Reorganized Debtors on the Effective Date, or (y) in accordance with the terms of the underlying Allowed Priority Claim; or (z) upon such other terms as may be agreed upon by the holder of such Allowed Priority Claim and the Reorganized Debtors or otherwise established pursuant to a Final Order of the Bankruptcy Court.

    3.2.3    *Impairment and Voting*.

Class 2 is Impaired by the Plan.  The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

**3.3**     *Class 3. Secured Tax Claims*.

    3.3.1    *Classification*.

Class 3 consists of all Allowed Secured Tax Claims.

    3.3.2    *Treatment*.

(a)     *General Terms*: Each holder of an Allowed Secured Tax Claim that has not otherwise been satisfied during the Chapter 11 Cases shall be paid the Allowed Amount of such Allowed Secured Tax Claim, at the option of the Reorganized Debtors and the First Lien Ad Hoc Group: (x) in full, in Cash, on the Effective Date or as

25

soon as practicable thereafter; or (y) in accordance with the terms of the underlying Allowed Secured Tax Claim; or (z) in thirty-six (36) consecutive equal monthly installments with such monthly payments beginning in the third calendar month following the occurrence of the Effective Date, with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code in an aggregate amount equal to such Allowed Secured Tax Claim.

(b) *Collateral*: Each holder of an Allowed Secured Tax Claim that has an Encumbrance shall retain the Encumbrance on the Debtors' Assets with the same validity, priority and extent that existed on the Petition Date until paid in full under the Plan. Thereafter, such Encumbrances shall be deemed cancelled, terminated and erased and have no further effect. Each holder of (i) Secured Tax Claims that are not Allowed or (ii) Allowed Secured Tax Claims with Encumbrances after the payment in full of such Allowed Secured Tax Claim under the Plan, shall execute any and all documents reasonably necessary to effectuate the cancellation, termination and erasure of such Encumbrances (and the Reorganized Debtors are hereby authorized to execute, file and deliver any documents reasonably necessary to effectuate the cancellation, termination and erasure of such Encumbrances in the event any such holder declines to do so).

3.3.3 *Impairment and Voting.*

Class 3 is Impaired by the Plan. The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

{00334581-1}

**3.4**     *Class 4.  First Lien Lenders' Secured Claims.*

   3.4.1    *Classification.*

   Class 4 consists of the First Lien Lenders' Secured Claims, which shall be Allowed in the amount of $181,182,013.83 as of the Petition Date.

   3.4.2    Treatment of Class 4 First Lien Lenders' Secured Claims

   (a)     *Amended First Lien Credit Facility.*

   The First Lien Lenders' Allowed Secured Claims shall be satisfied in part by the Reorganized Debtors' obligations under the Amended First Lien Credit Facility.  Interest shall accrue on the principal amount outstanding under the Amended First Lien Credit Facility from and after the Effective Date at the rate of interest set forth in the Amended First Lien Credit Agreement. The Debtors shall identify the initial  board members (or managers),  and any officers, of the Reorganized Debtors, who shall be subject to lender approval in accordance with governance terms to be agreed upon, and subject to any required approval of the Gaming Regulators.

   The lenders under the Amended First Lien Credit Facility will receive the Option, which will have a nominal strike price and will be exercisable in full (*e.g.*, no partial exercises) at the discretion of the holders of a majority of the outstanding debt under the Amended First Lien Credit Facility.  Exercise of the Option will be conditioned upon any required approval of the Gaming Regulators.

   (b)     *Residual Value.*  The First Lien Lenders will receive any and all value that the Debtors' estates may receive or possess before or after the Effective Date of the Plan (including through litigation) in connection with the Debtors' Assets that are subject to the Liens securing the First Lien Lenders' Secured Claims.

27

{00334581-1}

(c) *Payment of the Transaction Fees.* The Transaction Fees shall be paid in cash directly to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC, respectively, in accordance with the provisions of sections 2.1.1 and 2.1.2 of this Plan that are applicable to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC, respectively. Houlihan Lokey Capital, Inc. shall not be required to File any motion or application with the Bankruptcy Court for approval of its Transaction Fees.

(d) *Collateral.* The First Lien Agent and the First Lien Lenders shall retain all of their Liens and security interests in all of the Assets that are subject to the Liens securing the First Lien Lenders' Secured Claims. Section 552 of the Bankruptcy Code shall not apply to limit any of the First Lien Lenders' Liens and security interests.

(e) *Documentation.* The Confirmation Order shall constitute Bankruptcy Court approval of the Amended First Lien Credit Facility and all agreements and other documents in any way relating thereto or in furtherance thereof, including the Option, each of which as agreed upon by the borrower and the guarantors under the Amended First Lien Credit Facility, the First Lien Agent and the holders of at least 50.01% of the amount of the First Lien Lenders' Secured Claims outstanding as of the Petition Date, without any further action, formality or order of the Bankruptcy Court and without execution of such documents by any other First Lien Lenders. The Amended First Lien Credit Facility and all agreements and other documents in any way relating thereto or in furtherance thereof that are executed or otherwise approved by the borrower and the guarantors, the First Lien Agent and the holders of at least 50.01% of the amount of the First Lien Lenders' Secured Claims outstanding as of the Petition Date shall, from and after the Effective Date, be binding and enforceable as to all First Lien Lenders (and

28

any successors thereto and transferees and assignees thereof), including those First Lien Lenders that do not execute those agreements and documents.

(f)     *Deficiency Claim.* For voting purposes, and consistent with this Court's December 6, 2012 *Order Approving (I) The Confirmation Hearing Notice, The Contents Of The Solicitation Package, And The Manner Of Mailing And Service Of The Solicitation Package And Confirmation Hearing Notice, (II) The Procedures For Voting And Tabulation Of Ballots, (III) The Forms Of Ballots, And (IV) The Procedures For Allowing Claims For Voting Purposes Only* [P-299], the First Lien Lenders shall have an Allowed General Unsecured Claim in the amount of $56,182,013.83, which deficiency claim shall be classified in Class 8.  For convenience only, the foregoing deficiency claim amount is the same as under the Debtors' previous chapter 11 plan, and is not intended to be (nor shall it be deemed to be) based upon the actual value of the Debtors or the Assets.

3.4.3   *Impairment and Voting.*

Class 4 is Impaired by the Plan.  The holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

**3.5     *Class 5: Second Lien Lenders' Secured Claims.***

3.5.1   *Classification.*

Class 5 consists of the Second Lien Lenders' Secured Claims, which shall be Allowed in the amount of $116,252,898.38 as of the Petition Date.

3.5.2   *Treatment.*

(a)     *General Terms.* Because the Allowed First Lien Lenders' Secured Claims will not be paid in full under the Plan, the Second Lien Lenders' Secured Claims have no value under Section 506 of the Bankruptcy Code.  Accordingly, the entirety of

{00334581-1}

the Second Lien Lenders' Secured Claims shall be treated as Class 8 General Unsecured Claims for all purposes, including voting and distributions under the Plan, and the Second Lien Lenders will receive no distribution on account of the Class 5 Second Lien Lenders' Secured Claims. From and after the Effective Date, the Existing Second Lien Credit Facility shall continue in effect solely for purposes of allowing the Second Lien Agent to make any distributions to the Second Lien Lenders on account of their Class 8 General Unsecured Claims in accordance with the Plan, and permitting the Second Lien Agent to maintain any rights it may have against the Second Lien Lenders for fees, costs and expenses under the Existing Second Lien Credit Facility.

(b) *Collateral.* The Second Lien Lenders' Liens and security interests in the Debtors' Assets shall be cancelled, terminated and erased and have no further effect as of the Effective Date. The Second Lien Agent or Second Lien Lenders shall execute any and all documents reasonably necessary to effectuate the cancellation, termination and erasure of any liens and security interests (and the Reorganized Debtors are hereby authorized to execute, file and deliver any documents reasonably necessary to effectuate the cancellation, termination and erasure of such Encumbrances in the event the Second Lien Agent and the Second Lien Lenders decline to do so).

3.5.3 *Impairment and Voting.*

Class 5 is not a voting Class. The holders of Class 5 Claims are entitled to vote to accept or reject the Plan solely as Class 8 General Unsecured Creditors.

{00334581-1}

**3.6** *Class 6. Other Secured Claims.*

    3.6.1  *Classification.*

    Class 6 consists of all Allowed Other Secured Claims that have not otherwise been satisfied during the Chapter 11 Cases. Class 6 consists of separate sub-Classes for each separate Allowed Other Secured Claim.

    3.6.2  *Treatment.*

    (a)    *General Terms:* At the option of the Reorganized Debtors and the First Lien Ad Hoc Group, either (i) the legal, equitable, and contractual rights of the holder of such Allowed Other Secured Claim shall be reinstated as of the Effective Date in accordance with Section 1124(2) of the Bankruptcy Code; (ii) the holder of such Allowed Other Secured Claim against a Debtor shall (A) retain the Encumbrances securing such Allowed Other Secured Claim and (B) receive regular installment payments in Cash having a total value, as of the Effective Date (reflecting an interest rate determined as of the Effective Date under 26 U.S.C. § 6622), equal to such Allowed Other Secured Claim, over a period ending not later than five (5) years after the Petition Date; (iii) the collateral securing such Allowed Other Secured Claim shall be surrendered to the holder of such Allowed Other Secured Claim on the Effective Date or as soon as practicable thereafter; or (iv) the holder of such Allowed Other Secured Claim shall be paid in full in Cash on the Effective Date or as soon as practicable thereafter.

    (b)    *Collateral.* Holders of Allowed Other Secured Claims treated as provided in subsection (a)(i) or (a)(ii) shall retain any Encumbrances that are valid and perfected under applicable law that secure such Allowed Other Secured Claim with the same validity, priority and extent that existed on the Petition Date until paid in full under

{00334581-1}

the Plan. Those Encumbrances granted to the holders of Other Secured Claims other than those retained pursuant to subsection (a)(i) or (a)(ii) shall be cancelled, terminated and erased and have no further effect as of the Effective Date and the holders thereof shall execute any and all documents reasonably necessary to effectuate the cancellation, termination and erasure of such Encumbrances (and the Reorganized Debtors are hereby authorized to execute, file and deliver any documents reasonably necessary to effectuate the cancellation, termination and erasure of such Encumbrances in the event any such holder declines to do so).

3.6.3 *Impairment and Voting*.

Class 6 is Impaired by the Plan. The holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

**3.7** **Class 7. Assumed Liabilities**

3.7.1 *Classification*

Class 7 consists of all Claims against the Debtors or Estates which constitute Assumed Liabilities.

3.7.2 *Treatment*

The Reorganized Debtors shall assume and/or timely perform and discharge the Assumed Liabilities, respectively, in accordance with their respective terms.

3.7.3 *Impairment and Voting*.

Class 7 is Unimpaired by the Plan. The holders of Class 7 Claims are deemed to accept the Plan.

{00334581-1}

**3.8** ***Class 8. General Unsecured Claims (Including Rejection Damage Claims, Under-Insured or Uninsured Personal Injury Claims and Deficiency Claims of the First Lien Lenders and Second Lien Lenders).***

### 3.8.1 *Classification*

Class 8 consists of all Allowed General Unsecured Claims, including any Rejection Damage Claims, any under-insured or un-insured personal injury claims, the Deficiency Claims of the First Lien Lenders and Second Lien Lenders, and any deficiency claims of the holders of any Other Secured Claims.

### 3.8.2 *Treatment*

If the Class of Allowed General Unsecured Claims accepts the Plan pursuant to Section 1126(c) of the Bankruptcy Code, the holders of Allowed General Unsecured Claims shall be paid *pro rata* from the sum of $40,000, which would otherwise be distributable to the First Lien Lenders.  If, however, the Class of Allowed General Unsecured Claims does not accept the Plan pursuant to Section 1126(c) of the Bankruptcy Code, Class 8 General Unsecured Claims shall receive no distribution under the Plan on account of such Class 8 General Unsecured Claims.

### 3.8.3 *Impairment and Voting*

Class 8 is Impaired by the Plan.  The holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

**3.9** ***Class 9.  Interests in Riverboat Gaming.***

### 3.9.1 *Classification.*

Class 9 consists of the Debtors' Interests in Riverboat Gaming.

{00334581-1}

3.9.2   *Treatment.*

The holder of the Interests in Riverboat Gaming shall retain such Interests in Riverboat Gaming.

3.9.3   *Impairment and Voting*

Class 9 is Unimpaired by the Plan.  The Holder of the Class 9 Allowed Interests will retain its Interests under the Plan and is deemed to accept the Plan.

**3.10**   ***Class 10. Preferred Interests***.

3.10.1  *Classification.*

Class 10 consists of the Preferred Interests.

3.10.2  *Treatment.*

Holders of any and all Preferred Interests shall receive no distribution under the Plan and all Preferred Interests shall be cancelled on the Effective Date. As of the Effective Date, all Preferred Interests shall be deemed automatically canceled, terminated and of no further force or effect without any further act or action under any applicable agreement, law, regulation, order, or rule of law.

3.10.3  *Impairment and Voting*.

Class 10 is Impaired by the Plan. The holders of Class 10 Preferred Interests are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

**3.11**   ***Class 11.  Common Interests***.

3.11.1  *Classification.*

Class 11 consists of the Common Interests.

{00334581-1}

3.11.2 *Treatment.*

The holders of Class 11 Common Interests shall receive no distribution under this Plan and all Common Interests shall be cancelled on the Effective Date. As of the Effective Date, all Common Interests shall be deemed automatically canceled, terminated and of no further force or effect without any further act or action under any applicable agreement, law, regulation, order, or rule of law.

3.11.3 *Impairment and Voting.*

Class 11 is Impaired by the Plan. The holders of Class 11 Common Interests are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

# ARTICLE 4

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1** **Impaired Classes Vote.** Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

**4.2** **Acceptance by Impaired Classes of Claims.** Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules and any voting procedures order entered by the Bankruptcy Court.

**4.3** **Designation of Classes Entitled to Vote.** Classes 1, 2, 3, 4, 6, 8, 10, and 11 are Impaired, and the holders of Claims in Classes 1, 2, 3, 4, 6 and 8 are entitled to vote on the Plan. Class 5 is not a voting class; the holders of Claims in Class 7 and the

{00334581-1}

holder of Interests in Class 9 are each deemed to accept the Plan and are not entitled to vote on the Plan; and the holders of Interests in Classes 10 and 11 are each deemed to reject the Plan and are not entitled to vote on the Plan.

**4.4** *Nonconsensual Confirmation*. With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan or that is deemed to reject the Plan, the Debtors will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

# ARTICLE 5

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1** *General Treatment.*

(a)     Each executory contract or unexpired lease of the Debtors that has not expired by its own terms before the Effective Date or previously been assumed by the applicable Debtor in Possession pursuant to an order of the Bankruptcy Court, shall be assumed by the applicable Debtor as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on a "Schedule of Executory Contracts and Unexpired Leases to be Rejected" (to be Filed on or before the day that is ten (10) days prior to the Confirmation Hearing), (ii) that has been previously rejected by the Debtor in Possession pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for rejection of such executory contract or unexpired lease is filed prior to the Effective Date, or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" prior to the

36

Effective Date. Nothing in the Plan or any Plan Supplement, any exhibit to the Plan or any Plan Supplement, or any document executed or delivered in connection therewith creates any obligation or liability on the part of the Debtors, the Reorganized Debtors, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the applicable Debtor as of the Effective Date and shall be fully enforceable by the applicable Debtor in accordance with its terms thereof, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises. Listing a contract or lease on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" is not deemed an admission by the applicable Debtor or Reorganized Debtor that such contract is an executory contract or unexpired lease or that any Debtor or Reorganized Debtor has any liability thereunder.

The Debtors reserve the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its assumption under the Plan,

37

or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its rejection under the Plan. The Debtors shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the party to the affected executory contract and unexpired lease, to counsel for the First Lien Agent and the First Ad Hoc Group, and to the Office of the U.S. Trustee.

(b)        Subject to section 5.2 of this Plan and subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute: (i) the approval, pursuant to Sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to section 5.1(a) and section 5.1(b) of this Plan; and (ii) the approval, pursuant to Sections 365(a) and 1123(b) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to section 5.1(a) and section 5.1(b) of this Plan. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that: (i) all defaults of the Debtors under each such assumed executory contract or unexpired leases shall be deemed cured with respect to each such assumed executory contract or unexpired leases, (ii) no remaining Cure Costs are due and owing and there is no compensation due for any actual pecuniary loss other than as may be established at the Cure Dispute Hearing (defined below) or set forth in the Assumption Notice (defined below), (iii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired leases, (iv) such assumption is in the best interest of the applicable Debtor and its estate, (v) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance

38

with the terms thereof, (vi) the counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease; and (vii) the performance of each such assumed executory contract or unexpired lease after the Effective Date will be the responsibility of the Reorganized Debtors, as applicable, pursuant to 11 U.S.C. §363(k). All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Cases constitute valid contracts and leases, as applicable, enforceable by the Debtors against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed, assumed or assigned, or rejected under the Plan or during the Chapter 11 Cases.

(c)     Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the Debtors' Estates.

**5.2**     *Rejection Damage Claims; Deadline for Filing.*

(a)     *Treatment*:  Except as may otherwise be provided in the Plan, Rejection Damage Claims, if any, will be treated as General Unsecured Claims in Class 8.  All such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Reorganized Debtors and the Assets (and, for the avoidance of doubt, such rejected contracts and leases shall not constitute Assumed Liabilities).

(b)     ***Deadline: Each Person who is a party to a contract or lease rejected under the Plan must file with the Bankruptcy Court and serve on the Debtors or, if***

{00334581-1}

*after the Effective Date, on the Reorganized Debtors, no later than the later of (i) thirty*

*(30) days after the entry of an order for the rejection of such contract or lease or (ii)*

*thirty (30) days after the Effective Date, a proof of claim for damages alleged to arise*

*from the rejection of the applicable contract or lease or be forever barred from filing a*

*Claim, or sharing in distributions under the Plan, related to such alleged rejection*

*damages.*

  **5.3**  *Cure of Defaults in Assumed Agreements, Objections to Cure Costs.*

  (a)  *Cure Notice*: The Debtors shall serve a notice (the "Cure Notice") on the applicable counterparty of the Cure Cost, if any, (i) at least twenty-one days before the deadline to object to the confirmation of the Plan, or (ii) by such later date as provided in the order approving the Disclosure Statement.

  (b)  *Time for Payment of Cure Costs*: The Debtors shall cure any monetary defaults arising under each executory contract and lease to be assumed pursuant to section 5.1(a) or section 5.1(b) of this Plan, in accordance with Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost on the later of: (i) the Effective Date or as soon thereafter as is reasonably practicable; (ii) the date on which the Cure Cost has been resolved (either consensually or through judicial decision at the Cure Dispute Hearing) or as soon thereafter as is reasonably practicable; and (iii) such other date as mutually agreed upon by the Debtors or Reorganized Debtors and the non-Debtor party or parties to each such Assumed Lease and Contract.

  (c)  ***Objections to Cure Costs/Deadlines for Objections: Any Party that fails to timely object to the applicable Cure Cost set forth in the Cure Notice by the deadline to object to the confirmation of the Plan: (a) shall be forever barred, estopped and***

{00334581-1}

*enjoined from (x) disputing the Cure Cost set forth in the Cure Notice relating to any executory contract or unexpired lease, (y) asserting any Claim against the applicable Debtor or their properties arising under Section 365(b)(1) of the Bankruptcy Code; and (b) shall be deemed to have consented to the assumption of such executory contract and unexpired lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Reorganized Debtors, or any other assignee of the relevant executory contract or unexpired lease that any additional amounts are due or defaults exist, or conditions to assumption of such executory contract or unexpired lease must be satisfied (pursuant to Section 365(b)(1) of the Bankruptcy Code or otherwise). Any objection relating to any Cure Cost set forth in the Cure Notice shall specify the Cure Cost proposed by the counterparty to the applicable contract or lease.*

(d)     *Cure Dispute Hearing:*  In the event of a timely objection (a "Cure Dispute") regarding: (i) any Cure Cost; (ii) the ability of the Debtors to demonstrate "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under any executory contract or unexpired lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the Bankruptcy Court will consider any such objection during the Confirmation Hearing or as soon as practicable thereafter (a "Cure Dispute Hearing").  The Cure Costs required by Section 365(b)(1) of the Bankruptcy Code shall be paid at the time set forth section 5.3(b) of the Plan following the entry of a Final Order resolving such Cure Dispute and approving the assumption. To the extent a Cure Dispute relates solely to a Cure Cost, the applicable Debtor may assume the applicable executory contract or unexpired lease prior to the resolution of the Cure Dispute provided that the Debtors establish a reserve containing

{00334581-1}

Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor in its judgment, then such contract or lease shall not be assumed under the Plan and the Debtors (or the Reorganized Debtors, if after the Effective Date) shall have the right to reject the applicable executory contract or unexpired lease after such determination at the Cure Hearing.

      **5.4** *Employment Agreement*. On the Effective Date, the Amended Employment Agreement dated July 1, 2007, as amended May 3, 2010 and September 16, 2010, between Raymond C. Cook and Legends Gaming, LLC (the "Cook Employment Agreement") will be assumed and amended by the Reorganized Debtors to provide for (i) a term of one year from the Effective Date, (ii) compensation at the existing level of $25,000 per month for 6 months after the Effective Date and at a reduced level of $10,000 per month for the remaining 6 months, and benefits at existing levels for the entire one year term after the Effective Date, (iii) the payment of any accrued and unused vacation pay in five equal consecutive monthly installments commencing on the Effective Date, (iv) the cancellation of any change of control provisions, (v) the termination of the non-compete and non-solicit covenants set forth in section 5 of the Cook Employment Agreement at the end of such one year term and (vi) the modification of the duties and responsibilities set forth in section 2 of the Cook Employment Agreement to that of a consultant to the Reorganized Debtors. A draft of the amendment to the Cook Employment Agreement will be filed as part of the Plan Supplement.

{00334581-1}

# ARTICLE 6

## DISTRIBUTIONS UNDER THE PLAN

**6.1**   *Distributions Under the Plan*.  Except as otherwise provided in the Plan or order of the Bankruptcy Court, the Reorganized Debtors shall make all distributions to the holders of Allowed Claims that are required under this Plan.  Each distribution shall be made on a Distribution Date (unless otherwise provided herein, or otherwise ordered by the Bankruptcy Court).  Distributions to be made on the Distribution Date shall be deemed actually made on the Distribution Date if made either (a) on the Distribution Date or (b) as soon as practicable thereafter.  If any litigation now pending is resolved by Final Order or settlement, and any of the Debtors are ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

**6.2**   *Record Dates*.

(a)   *Record Date for Voting on the Plan*:  The claims registers for each of the Classes of Claims and Interests as maintained by the Debtors or any third party, including the voting agent, shall be deemed closed on the date of entry of an order of the Bankruptcy Court approving the Disclosure Statement (or, with respect to any Class, any later date to which the Debtors agree) for purposes of voting on the Plan, and there shall be no further changes to reflect any new record holders of any Claims or Interests for purposes of voting on the Plan.

43

(b)     *Record Date for Distributions Under the Plan*:  The claims registers for each of the Classes of Claims and Interests as maintained by the Debtors or any third party, including the First Lien Agent and the Second Lien Agent, shall be deemed closed on the date of entry of the Confirmation Order.  The Debtors, the Reorganized Debtors, the First Lien Agent and the Second Lien Agent shall be entitled to recognize for purposes of distributions under the Plan only with those holders stated on the registers of holders maintained by the Debtors and the Reorganized Debtors, the First Lien Agent (for purposes of distributions to First Lien Lenders) and the Second Lien Agent (for purposes of distributions to Second Lien Lenders) as of the date of entry of the Confirmation Order.  Notwithstanding the foregoing, the First Lien Agent (for purposes of distributions to First Lien Lenders) and the Second Lien Agent (for purposes of distributions to Second Lien Lenders) may decide in their respective discretion to observe a different record date for purposes of distributions under the Plan.

**6.3     *Delivery of Distributions*.**  Except as otherwise provided in this Plan, distributions to a holder of an Allowed Claim shall be made at the address of such holder as indicated on the Debtors' records.  Notwithstanding the foregoing, distributions to the First Lien Lenders and Second Lien Lenders shall be made to and as directed by the First Lien Agent and the Second Lien Agent, respectively. In the event that any such distribution is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtors have determined such then current address, *provided, however*, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed

{00334581-1}

property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtors.  In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.

6.4    *Manner of Payment Under the Plan*.  At the option of the Reorganized Debtors, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5    *No Fractional Distributions*.  No fractional dollars shall be distributed from the Reorganized Debtors under the Plan.  For purposes of distributions from the Reorganized Debtors, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

6.6    *Withholding and Reporting*.  The Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

6.7    *Surrender of Instruments*.  At the option of the Reorganized Debtors, as a condition to receiving any distribution under the Plan from the Reorganized Debtors, each holder of an Allowed Claim evidenced by a certificated instrument must either (a) surrender such instrument to the Reorganized Debtors or (b) submit evidence satisfactory

45

to the Reorganized Debtors of the loss, theft, mutilation, or destruction of such instrument. If any holder of an Allowed Claim fails to do either (a) or (b) before the one year anniversary of the Effective Date, such holder shall be deemed to have forfeited its Claim and all rights appurtenant thereto, including the right to receive any distributions from the Reorganized Debtors hereunder. After the first anniversary of the Effective Date, all payments from the Reorganized Debtors not distributed pursuant to this section 6.7 shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtors.

# ARTICLE 7

# MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1** *New Interests in Legends Gaming*.

On the Effective Date, the New Interests shall be issued to the New Interest Holder under the terms and conditions of one or more new management agreements, forms of which will be filed in a Plan Supplement (but subject to definitive executed documentation), and any other agreements and documents in any way relating thereto or in furtherance thereof (as may be amended, restated or supplemented from time to time, the "New Management Agreement"). Notwithstanding the foregoing, the holders of at least 50.01% of the amount of the First Lien Lenders' Secured Claims outstanding as of the Petition Date may determine that the New Interests shall be issued to any party other than the New Interest Holder, without the consent of the New Interest Holder, and that person or entity shall be deemed to be the New Interest Holder for purposes of this Plan. The New Interests shall not be sold by the New Interest Holder except as may otherwise

46

{00334581-1}

be provided in the New Management Agreement. The New Interests shall not be subject to any lien, claim, charge, security interest, option or any similar right whatsoever that may purportedly be granted, except for the Option and except as may otherwise be provided in the New Management Agreement.

### 7.2 *Management of the Reorganized Debtors.*

As of the Effective Date, the New Interest Holder shall manage the Debtors' Business subject to the terms of the New Management Agreement and subject, to the extent required, to the approval of the Gaming Regulators. On the Effective Date of the Plan, William J. McEnery ("McEnery") and the Reorganized Debtors will execute a Consulting and Non-Competition Agreement (covering the Shreveport and Vicksburg gaming markets only) providing payment to McEnery of twelve consecutive monthly installments of $16,667 each beginning on the first day of the month following the Effective Date and payable on the first day of each successive month plus existing health insurance benefits for the one year term after the Effective Date. The Consulting and Non-Competition Agreement will provide that McEnery will be available upon the New Interest Holder's request to assist (to the extent the New Interest Holder deems necessary or appropriate) in the transition of management.

### 7.3 *Licensing.*

In connection with the transactions contemplated herein, the Debtors and, as applicable, the Reorganized Debtors, and any other party required under applicable law, shall cooperate in good faith to pursue all necessary federal, state, local and foreign governmental authorizations, consents and regulatory approvals, including to the extent

{00334581-1}

required, approval of the Gaming Regulators, to lawfully consummate and implement the Plan.

**7.4    *Plan Documents.***

The Plan and all documents to implement this Plan and the transactions contemplated herein must be in form and substance reasonably satisfactory to the Debtors and the First Lien Ad Hoc Group. The entry of the Confirmation Order shall constitute approval of all such documents, including the documents in all Plan Supplements.

# ARTICLE 8

## RESOLUTION OF DISPUTED CLAIMS

**8.1    *Objections to Claims; Prosecution of Disputed Claims*.** The Debtors and, after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to the allowance, amount or classification of Claims asserted in the Chapter 11 Cases (other than Claims that are expressly allowed under this Plan or a Final Order), and such objections may be litigated to Final Order by the Debtors or Reorganized Debtors, as applicable, or compromised and settled in accordance with the business judgment of the Debtors or Reorganized Debtors, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims shall be Filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtors without notice upon *ex parte* motion.

**8.2    *Estimation of Disputed Claims*.** The Debtors and, after the Effective Date, the Reorganized Debtors may at any time request that the Bankruptcy Court

{00334581-1}

estimate for all purposes, including distribution under this Plan, any Disputed, contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtors or the Reorganized Debtors have previously objected to such Claim. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim at any time, including, without limitation, during the pendency of an appeal relating to such objection.

**8.3** *No Distribution on Account of Disputed Claims.* Except as otherwise provided in this Plan and except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order. Except for Assumed Liabilities, or as otherwise provided in the Plan or other order of the Bankruptcy Court, the Reorganized Debtors shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims in a particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims were ultimately to be allowed in full by Final Order with respect to distributions to be made by the Reorganized Debtors under the Plan. For the avoidance of doubt, none of the distributions to holders of the First Lien Lenders' Secured Claims shall be subject to this section 8.3.

{00334581-1}

# ARTICLE 9

## EFFECT OF CONFIRMATION OF PLAN

**9.1**   *Vesting of Assets*.

(a)      *Assets of the Debtors.* On and after the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, all Assets of the Debtors (including, without limitation, the Business and all past, present and future claims and Causes of Action against Global Gaming) shall vest in the Reorganized Debtors.

(b)      *Avoidance Claims and Causes of Action.* Except  (i) for Causes of Action that are expressly released in this Plan, the Final Cash Collateral Order or any other Final Order and (ii) as otherwise expressly provided in this Plan, the Final Cash Collateral Order or any other Final Order, any and all rights, claims, or Causes of Action of the Debtors or the Debtors in Possession pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including the Global Litigation and the Avoidance Claims, any rights to, claims, or Causes of Action, all claims and Causes of Action against any third parties including, without limitation to, any rights, claims, and Causes of Action, and any other Causes of Action shall, pursuant to this Plan, be retained by and vest in the Reorganized Debtors.  For the avoidance of any doubt, all of the Debtors' past, present and future claims and Causes of Action against Global Gaming (including, without limitation, the Global Litigation) shall vest in the Reorganized Debtors and the First Lien Agent and the First Lien Ad Hoc Group shall continue to be entitled to intervene in the Global Litigation.  The Reorganized Debtors shall have the right to assert and prosecute any and all Causes of Action as representative of the Debtors' Estates under 11 U.S.C. §1123(b)(3)(B).

50

**9.2     Binding Effect.**  Subject to the occurrence of the Effective Date, the provisions of this Plan shall bind any holder of a Claim against or an Interest in any of the Debtors and such holder's successors and assigns, whether or not such holder's Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan, as well as on any and all other parties in interest.

**9.3     Discharge of the Debtors.**  Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtors, the Debtors in Possession, the Reorganized Debtors, the Assets, properties, or Interests in, or property of the Debtors, the Debtors in Possession, and the Reorganized Debtors of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtors and the Debtors in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, or any conduct for which any of the Debtors may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtors shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan from

{00334581-1}

the Reorganized Debtors and (b) Claims and Interests that are not canceled and discharged pursuant to express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan.  All Entities are precluded and forever barred from asserting against the Debtors, the Debtors in Possession, the Reorganized Debtors, the Assets, properties, or Interests in or property of the Debtors, the Debtors in Possession, or the Reorganized Debtors of any nature whatsoever any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to express provisions of this Plan, and then only to the extent and in manner expressly provided in the Plan.

**9.4** *Indemnification Obligations*.  All rights to indemnification from the Debtors or Reorganized Debtors, as applicable, whether pursuant to applicable law, certificates of incorporation, articles of incorporation or bylaws (or similar documents), indemnification agreements, contribution agreements or other agreements affording indemnity or similar protection to any person or Entity that are in effect immediately prior to the occurrence of the Effective Date shall terminate on the Effective Date without further action, and shall extinguish, discharge, and terminate any Claims or proofs of claim filed with respect to such indemnification, but without prejudice to the rights of any persons (i) under the prior or existing directors' and officers' liability insurance policies, (ii) for indemnity from the Debtors or Reorganized Debtors, as applicable, up to the

{00334581-1}

amount of, and payable solely from, the proceeds of prior or existing directors' and officers' liability insurance policies, or (iii) under the Amended First Lien Credit Facility.

**9.5**      *Term of Certain Injunctions.*   Unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, the Chapter 11 Cases, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms. In addition, on and after the Confirmation Date, the Debtors may seek such further orders as they may deem necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

**9.6**      *Global Gaming Claims, Rights and Reservations.*

Notwithstanding any other terms of the Plan which may be interpreted to the contrary:

    i.   Global Gaming shall not be stayed or enjoined by the Plan or Confirmation from prosecuting the rights, claims, demands, defenses, or counterclaims of Global Gaming presently asserted or that may be asserted in Adversary Proceedings 13-01007 and/or 13-01008 currently pending in the Bankruptcy Court ("Pending Adversary Proceedings"), as against the Debtors or Reorganized Debtors and, as applicable, against third parties.

    ii.   The rights (if any) of Global Gaming to pursue its claims, and interests in, to and upon and to the return of the escrowed amount of $6.25 million deposited pursuant to that certain Purchase Agreement dated as of July 25, 2012 shall be unaffected by the Plan or Confirmation.

    iii.   Nothing herein shall be interpreted to limit or restrict the Debtors' and Reorganized Debtors' discharge under Section 1141 of the Bankruptcy Code or the Plan of any and all Claims or Administrative Expense Claims asserted or that could have been or may be asserted by (a) Global Gaming in the Pending Adversary Proceedings, (b) by any proof of claim filed by Global Gaming, (c)

{00334581-1}

any motion or application for approval of an Administrative Expense Claim filed by Global, or (d) otherwise arising as a result of any claim, right, demand, defense or counterclaim of Global as of Confirmation (collectively, the "Global Claims").

    iv.    If Global Gaming is determined by Final Order to have an Allowed Claim or Allowed Administrative Expense Claim against the Debtors or Reorganized Debtors on the basis of any Global Claims, such Allowed Claim or Allowed Administrative Expense Claim shall be treated in accordance with the terms of the Plan regarding the payment of Allowed Claims or Allowed Administrative Expense Claims, as applicable.

    v.    The deadline for Global to File an Administrative Expense Claim in the Bankruptcy Case in accordance with Section 2.1.4 of the Plan is extended until 10 days after the entry of a Final Order or Judgment in the Pending Adversary Complaints.

    vi.    The Debtors and the Reorganized Debtors retain (a) any all defenses and objections to any and all Global Claims, including any failure of Global to file a timely proof of claim and all defenses and objections to the priority, amount or allowance of any Global Claims, (b) any of their past, present and future claims and Causes of Action against Global Gaming (including, without limitation, the Global Litigation); and (c) any claims for the escrowed amount of $6.25 million deposited pursuant to that certain Purchase Agreement dated as of July 25, 2012.

    vii.    All rights of Global Gaming as against non-Debtor third parties shall be unaffected by the Plan or Confirmation and are fully reserved.

**9.7 *NO SUCCESSOR LIABILITY. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, NONE OF THE DEBTORS, THE REORGANIZED DEBTORS, THE FIRST LIEN AGENT, THE FIRST LIEN AD HOC GROUP, THE FIRST LIEN LENDERS, THE CONSENTING SECOND LIEN LENDERS, OR THE SECOND LIEN AGENT WILL HAVE ANY RESPONSIBILITIES, PURSUANT TO THE PLAN OR OTHERWISE, FOR ANY LIABILITIES OR OBLIGATIONS OF THE DEBTORS OR ANY OF THE DEBTORS' PAST OR PRESENT SUBSIDIARIES RELATING TO OR ARISING***

{00334581-1}

*OUT OF THE OPERATIONS OF OR ASSETS OF THE DEBTORS OR ANY OF THE DEBTORS' PAST OR PRESENT SUBSIDIARIES, WHETHER ARISING PRIOR TO, OR RESULTING FROM ACTIONS, EVENTS, OR CIRCUMSTANCES OCCURRING OR EXISTING AT ANY TIME PRIOR TO THE EFFECTIVE DATE. THE DEBTORS, THE REORGANIZED DEBTORS, THE FIRST LIEN AGENT, THE FIRST LIEN AD HOC GROUP, THE FIRST LIEN LENDERS, THE CONSENTING SECOND LIEN LENDERS, AND THE SECOND LIEN AGENT HAVE NO SUCCESSOR OR TRANSFEREE LIABILITY OF ANY KIND OR CHARACTER, FOR ANY CLAIMS.*

*9.8 RELEASE OF DEBTORS' ESTATES' CLAIMS. AS OF THE EFFECTIVE DATE, AND SUBJECT TO ITS OCCURRENCE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, ANY AND ALL CAUSES OF ACTION OF THE DEBTORS, DEBTORS IN POSSESSION, THE DEBTORS' ESTATES AND THE REORGANIZED DEBTORS AGAINST ANY OF THE RELEASED PARTIES BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE SHALL BE FOREVER RELEASED AND DISCHARGED. THE FOREGOING RELEASES, HOWEVER, SHALL NOT (1) WAIVE ANY DEFENSES TO ANY CLAIMS ASSERTED AGAINST THE DEBTORS BY ANY RELEASED PARTIES EXCEPT TO THE EXTENT SUCH CLAIMS HAVE BEEN SPECIFICALLY ALLOWED IN THE PLAN OR BY A FINAL ORDER OF THE BANKRUPTCY COURT, OR (2) RELEASE ANY CLAIMS OR CAUSES OF ACTION*

55

{00334581-1}

*BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY.  FOR THE AVOIDANCE OF DOUBT, GLOBAL GAMING SHALL NOT BE A RELEASED PARTY AND ALL RIGHTS AND CLAIMS AND CAUSES OF ACTION, INCLUDING THE GLOBAL LITIGATION, WILL VEST IN THE REORGANIZED DEBTORS ON THE EFFECTIVE DATE.*

*9.9    RELEASE BY HOLDERS OF CLAIMS.  EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM WHO HAS VOTED TO ACCEPT THE PLAN SHALL BE DEEMED TO HAVE UNCONDITIONALLY RELEASED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ON ACCOUNT OF ANY RELATIONSHIP WITH THE DEBTORS OR ON ACCOUNT OF ANY CLAIM, EXCEPT FOR (I) WITH RESPECT TO THE REORGANIZED DEBTORS, CLAIMS WHICH ARE OR BECOME ALLOWED CLAIMS AND ARE TO BE PAID AS PROVIDED PURSUANT TO THE PLAN, AND (II) ANY CLAIMS OR CAUSES OF*

56

*ACTION BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY.*

**9.10** *EXCULPATION. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED FOR IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE MAXIMUM EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES, THE DEBTORS, THE DEBTORS IN POSSESSION AND THE REORGANIZED DEBTORS SHALL HAVE NO LIABILITY TO ANY ENTITY FOR ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THIS PLAN, THE ADMINISTRATION OF THIS PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES, EXCEPT FOR CLAIMS BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN ALL RESPECTS, EACH OF THE FOREGOING SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES WITH RESPECT TO THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF*

57

***CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THIS PLAN, THE ADMINISTRATION OF THIS PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES.***

**9.11**   *Preservation of All Causes of Action Not Expressly Settled, Released or Transferred.*

For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to <u>section 9.1</u>, unless a claim or Cause of Action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised, settled or transferred in this Plan, the Final Cash Collateral Order or any other Final Order, the Reorganized Debtors expressly reserve claims or Causes of Action which vest in the Reorganized Debtors for adjudication or pursuit by the Reorganized Debtors after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise.  The Reorganized Debtors expressly reserve any and all past, present and future claims and Causes of Action against Global Gaming, including those asserted or which may be asserted at any time in the future in the Global Litigation, and such claims and Causes of Action shall vest in the Reorganized Debtors.

58

The Reorganized Debtors expressly reserve and shall have the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtors or the Debtors in Possession which vest in the Reorganized Debtors under the Plan as trustees for or on behalf of the creditors, not specifically and expressly waived, relinquished, released, compromised, settled or transferred in this Plan, the Final Cash Collateral Order or any other Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. Except as otherwise set forth herein, the Reorganized Debtors shall be representatives of the Estates appointed for the purpose of pursuing any and all such claims and Causes of Action under 11 U.S.C. §1123(b)(3)(B), and the First Lien Agent and the First Lien Ad Hoc Group shall continue to be entitled to intervene in the Global Litigation.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised, settled or transferred in this Plan, the Final Cash Collateral Order or any other Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtors' Schedules, or (d) such Entity's scheduled Claim has been objected to by the

{00334581-1}

Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

**9.12    *Insurance Neutrality*.** Except as may otherwise occur pursuant to applicable bankruptcy or non-bankruptcy law, nothing contained in this Plan shall in any way operate to, or have the effect of, impairing, supplementing, expanding, decreasing, or modifying: (A) the rights of any of the Debtors' insurers, including but not limited to Zurich American Insurance Company ("ZAIC") or any other affiliate of ZAIC (collectively, "Zurich" and together with all other entities that are providing or have provided insurance to the Debtors or any affiliate or predecessor of the Debtors, the "Insurers"); (B) the rights of claimants against any Insurers for recovery of Claims solely from such Insurers, (C) the rights of Cannon Cochran Management Services, Inc. ("CCMSI"), which has served as a Third-Party Administrator with regard to certain policies of insurance issued by Zurich to the Debtors; or (D) any rights or obligations arising under any insurance policy issued to the Debtors or under which the Debtors may seek coverage (the "Policies") or Claimants may seek recovery. For all issues of insurance coverage or otherwise, except as may otherwise  be provided by applicable bankruptcy or non-bankruptcy laws, the provisions, terms, conditions, and limitations of the Policies shall control.

**9.13    *INJUNCTION*. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE AMENDED FIRST LIEN CREDIT FACILITY OR THE CONFIRMATION ORDER, AS OF THE CONFIRMATION DATE, BUT SUBJECT TO THE OCCURRENCE OF THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS OR THE ESTATES ARE, WITH RESPECT TO ANY SUCH**

60

*CLAIMS OR INTERESTS, PERMANENTLY ENJOINED AFTER THE CONFIRMATION DATE FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING THE DEBTORS, THE REORGANIZED DEBTORS, OR ANY OF THEIR PROPERTY, THE RELEASED PARTIES, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (II) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS, THE REORGANIZED DEBTORS OR ANY OF THEIR PROPERTY, THE RELEASED PARTIES, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (III) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE REORGANIZED DEBTORS OR ANY OF THEIR PROPERTY, THE RELEASED PARTIES, OR ANY DIRECT OR*

61

*INDIRECT TRANSFEREE OF ANY PROPERTY OF OR SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS (IV) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW; AND (V) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS, OR OBTAINING BENEFITS, PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN, THE CONFIRMATION ORDER, AND THE AMENDED FIRST LIEN CREDIT FACILITY.*

## ARTICLE 10

## THE EFFECTIVE DATE OF THE PLAN

**10.1** *Conditions to Occurrence of Effective Date of Plan.* The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtors and the First Lien Ad Hoc Group acting jointly (the Debtors and the First Lien Ad Hoc Group may withhold consent to any waiver in their sole discretion) and any other party whose

{00334581-1}

consent to any such waiver is specifically required in writing under the Plan, if such waiver is legally permissible with respect thereto:

10.1.1  The Confirmation Order and the Plan as confirmed pursuant to the Confirmation Order and Filed shall be in a form and substance reasonably satisfactory to the Debtors and the First Lien Ad Hoc Group.

10.1.2  The Confirmation Order shall be a Final Order.

10.1.3  The Bankruptcy Court shall have made the statutorily-required findings of fact and conclusions of law in connection with the confirmation of this Plan, each of which findings and conclusions shall be expressly set forth in the Confirmation Order or in findings of fact and conclusions of law entered in support of and contemporaneously with the entry of the Confirmation Order.

10.1.4  All actions, Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered in form and substance reasonably satisfactory to the Debtors and the First Lien Ad Hoc Group.

10.1.5  Any governmental authorizations, consents and regulatory approvals, including to the extent required, approval of the Gaming Regulators and any other Governmental Authorities, required for the consummation of each of the transactions contemplated in the Plan shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

10.1.6  Except as otherwise specifically provided in this Plan, all fees and expenses due to or incurred by Professionals for the Debtors through the Effective Date

63

not previously paid pursuant to interim or final orders of the Bankruptcy Court shall have been paid into and shall be held in escrow, free and clear of Liens, Claims and Encumbrances (other than the rights of such Professionals to be paid from such funds) until due and payable in accordance with applicable court order.

10.1.7 Except as otherwise specifically provided in this Plan, all fees and expenses due to or incurred by professionals for the First Lien Agent and the First Lien Ad Hoc Group through the Effective Date that have not been previously paid shall have been paid in cash directly to each such professional.

10.1.8 All payments required by this Plan to be made on the Effective Date shall have been made.

10.1.9 The Amended First Lien Credit Facility shall have been executed by the borrower and the guarantors under the Amended First Lien Credit Facility, the First Lien Agent and the holders of at least 50.01% of the Allowed amount of the First Lien Lenders' Secured Claims.

10.1.10 The New Management Agreement shall have been fully executed and approved, to the extent necessary, by the Gaming Regulators.

10.1.11 To the extent required under applicable law, any orders respecting the individual bankruptcy case of William J. McEnery necessary to effectuate the terms of this Plan shall have been entered and become Final Orders.

**10.2** *Filing of Notice of Effective Date*. Within two (2) Business Days after the occurrence of the Effective Date, the Reorganized Debtors shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtors reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or

{00334581-1}

waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

**10.3** *Withdrawal of Plan Prior to the Confirmation Date.* The Debtors may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Cases. If the Plan is withdrawn prior to the Confirmation Date in accordance with this section, then the Plan shall be deemed withdrawn without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan shall be of no further force or effect, and (i) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtors' rights and Claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any Claims by or against the Debtors or any other persons or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors or any other persons.

# ARTICLE 11

# MISCELLANEOUS PROVISIONS

**11.1** *Payment of Statutory Fees.* All fees and expenses payable pursuant to Section 1930 of title 28 of the United States Code through the Effective Date shall be paid by the Debtors, and, after the Effective Date, by the Reorganized Debtors, as, when

and in the amount as required by applicable law, until the Bankruptcy Court enters a Final Decree.

**11.2** *Pension Plans.* For avoidance of doubt, on and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within meaning of Section 1114 of the Bankruptcy Code), if any, at the level established in accordance with Section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which such Debtors had obligated themselves to provide such benefits. Nothing herein shall: (i) restrict the Reorganized Debtors' right to modify the terms and conditions of the retiree benefits, if any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or Section 1144(m) of the Bankruptcy Code; or (ii) be construed as an admission that any such retiree benefits are owed by the Debtors or Reorganized Debtors.

**11.3** *Notice.* Any notices, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be in writing (including by electronic mail or facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (a) if personally delivered or if delivered by electronic mail or courier service, when actually received by the Entity to whom such notice is sent, or (b) if deposited with the United States Postal Service (whether actually received or not), at the close of business on the third Business Day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, addressed to the appropriate Entity or Entities, at the address of such Entity or Entities set forth below (or at such other address as such Entity may

{00334581-1}

designate by written notice to all other Entities listed below in accordance with this section:

| If to the Debtors or Reorganized Debtors: | Heller, Draper, Hayden, Patrick & Horn, L.L.C. 650 Poydras Street, Suite 2500 New Orleans, LA 70130 Tel: 504-299-3300 Fax: 504-299-3399 Attn: William H. Patrick, Esq. Email: wpatrick@hellerdraper.com Attn: Tristan Manthey, Esq. Email: tmanthey@hellerdraper.com |
|---|---|
| If to the First Lien Agent and the First Lien Ad Hoc Group: | Latham & Watkins LLP 885 Third Avenue New York, NY 10022 Tel: 212-906-1200 Fax: 212-751-4864 Attn: Michael J. Riela Email: michael.riela@lw.com |

**11.4**    *Headings*.  The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

**11.5**    *Governing Law*.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.  For the avoidance of doubt, the governing law provisions of (a) the Amended First Lien Credit Facility and related agreements and (b) the Purchase Agreement with Global Gaming (as amended) and related documents, shall control with respect to those agreements.

67

**11.6     Compliance with Tax Requirements**.  In connection with this Plan, the Debtors and the Reorganized Debtors will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**11.7     Exemption from Transfer Taxes**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan shall be exempt from all taxes as provided in such Section 1146(a) of the Bankruptcy Code.

**11.8     Exemption from Securities Law.** Distributions pursuant to the Plan and the offer, issuance, sale or purchase of the New Interests under this Plan shall be exempt from registration under any federal (including the Securities Act), state or local law, rule or regulation pursuant to Section 1145 of the Bankruptcy Code or other applicable law. The New Interest Holder and the Reorganized Debtors shall be deemed to qualify as successors to the Debtors under the Plan solely for purposes of Section 1145 of the Bankruptcy Code.  Distributions, including the offer, issuance, sale or purchase of the New Interests under this Plan, shall be deemed to satisfy all of the requirements of Section 1145(a)(l) of the Bankruptcy Code and therefore be exempt from registration under the Securities Act and any federal, state or local securities law, rule or regulation.

The entry of the Confirmation Order shall constitute findings of fact and conclusions of law that any Released Party who solicits or participates in the offer, issuance, sale or purchase of the New Interests under this Plan, is in good faith and has complied with the applicable provisions of the Bankruptcy Code, and is not liable, on

68

account of such solicitation or participation, for any violation of an applicable law, rule or regulation governing solicitation of acceptance or rejection of this Plan or the offer, issuance, sale or purchase of any securities, including but not limited to the New Interests, under this Plan.

**11.9** *Further Authorizations*. The First Lien Agent, the First Lien Ad Hoc Group, the Debtors, and the Reorganized Debtors (after the Effective Date), may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

**11.10** *Successors and Assigns.* The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

**11.11** *Modification and Amendment of the Plan.* Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, the Plan may be amended or modified by the Debtors at any time, and, after the Effective Date, by the Reorganized Debtors, *provided* that, notwithstanding the foregoing, no amendments or modifications which affect the rights or obligations of the First Lien Ad Hoc Group or the First Lien Agent may be made to the Plan after entry of the Confirmation Order without the written approval of the First Lien Ad Hoc Group or the First Lien Agent, which approval may be granted or withheld in their respective sole discretion.

**11.12** *Nonvoting Stock.* To the extent applicable and required by Section 1123(a)(6) of the Bankruptcy Code, the certificates of incorporation or articles of

{00334581-1}

organization of any corporate Reorganized Debtors shall be deemed to prohibit the issuance of nonvoting equity securities by each such Reorganized Debtor, subject to further amendment of such certificates of incorporation or articles of organization as permitted by applicable law.

# ARTICLE 12

## RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases or this Plan, including, without limitation, the following:

**12.1** *Executory Contracts and Unexpired Leases.* To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are parties or with respect to which the Debtors may be liable, (ii) to review and determine all Cure Costs under any assumed executory contract or unexpired lease, and (iii) to review and determine any Rejection Damage Claims.

**12.2** *Causes of Action.* To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtors after the Effective Date, including but not limited to the Global Litigation.

**12.3** *Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.* To hear and determine any objections to the allowance of

{00334581-1}

Claims (other than Claims that are Allowed pursuant to the Plan or a Final Order), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, including any Claim which may constitute or constitutes an Assumed Liability, and to determine any and all disputes among creditors with respect to their Claims.

### 12.4 *Enforcement/Modification of Plan.*

12.4.1 To hear and determine any requests to modify this Plan (which requests may only be made with the prior written consent of the Consenting First Lien Lenders).

12.4.2 To remedy any defect or omission in this Plan, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.3 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.4 To hear and determine such other matters that may be set forth in the Plan, the Confirmation Order or that relate to any transactions required or contemplated by the Plan.

12.4.5 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Cases.

12.4.6 To hear and determine any controversy, suit or dispute relating to payments or distributions under the Plan.

{00334581-1}

12.4.7 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

12.4.8 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

**12.5** ***Compensation of Professionals for the Debtors*.**  To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals for the Debtors and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

**12.6** ***Settlements*.**  To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtors or the Reorganized Debtors.

**12.7** ***Taxes.***  To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including any request for expedited determination pursuant to Section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to the returns for any and all taxable periods ending after the Petition Date through the Effective Date).

**12.8** ***506(b) Claims*.**  To determine the amounts, if any, of the reasonable fees, costs and other charges payable under Section 506(b) of the Bankruptcy Code.

**12.9** ***Specific Purposes.***  To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

{00334581-1}

**12.10** *Final Decrees.* To enter one or more orders or final decrees closing the Chapter 11 Cases.

[Remainder of Page Intentionally Left Blank.]

{00334581-1}

Dated: June 24, 2013

**PLAN FILED BY:**

Louisiana Riverboat Gaming Partnership
Legends Gaming of Louisiana-1, LLC
Legends Gaming of Louisiana-2, LLC
Legends Gaming, LLC
Legends Gaming of Mississippi, LLC
Legends Gaming of Mississippi RV Park, LLC


BY: */s/ Raymond C. Cook*
RAYMOND C. COOK THEIR
PRESIDENT AND CHIEF FINANCIAL
OFFICER


*/s/ William H. Patrick, III*
William H. Patrick, III, La. Bar No. 10359
Tristan Manthey, La. Bar No. 24539
**HELLER, DRAPER, HAYDEN,
PATRICK & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: 504-299-3300
Fax: 504-299-3399
Email: wpatrick@hellerdraper.com
tmanthey@hellerdraper.com

As counsel to the Debtors and Debtors in
Possession

{00334581-1}

# NOTICE ANNEX

Pursuant to 11 U.S.C. § 342, the following sets forth the name, addresses and last four digits of the tax identification number for each of the referenced debtors and debtors in possession:

| DEBTORS AND ADDRESSES | CASE NO. | TAX I.D. NO. |
|---|---|---|
| Louisiana Riverboat Gaming Partnership<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12013 | xx-xxx5811 |
| Legends Gaming of Louisiana-1, LLC<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12014 | xx-xxx3064 |
| Legends Gaming of Louisiana-2, LLC<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12015 | xx-xxx3099 |
| Legends Gaming, LLC<br>7670 Lake Mead Blvd., Ste. 145<br>Las Vegas, NV 89128-6651 | 12-12017 | xx-xxx7524 |
| Legends Gaming of Mississippi, LLC<br>3990 Washington Street<br>Vicksburg, MS 39180 | 12-12019 | xx-xxx3167 |
| Legends Gaming of Mississippi RV Park, LLC<br>3990 Washington Street<br>Vicksburg, MS 39180 | 12-12020 | xx-xxx8765 |

{00334581-1}

# EXHIBIT A


## RETAINED CLAIMS AND CAUSES OF ACTION


## [ATTACHED]

# EXHIBIT D

## RETAINED CLAIMS AND CAUSES OF ACTION

### 1.      Retained Claims and Causes of Action

Except as otherwise specifically provided in the Plan, the Final Cash Collateral Order or any other Final Order,[1] the Reorganized Debtors shall retain all rights to commence and pursue, as appropriate, any and all claims and Causes of Action (as that terms is defined in the Plan), whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, and including but not limited to, the claims and Causes of Action specified in the Plan.  Due to the size and scope of the Debtors' business operations and the multitude of business transactions therein, there may be numerous other claims and Causes of Action that currently exist or may subsequently arise, in addition to the claims and Causes of Action identified below.  The Debtors are also continuing to investigate and assess which claims and Causes of Action may be pursued. The Reorganized Debtors do not intend, and it should not be assumed that because any existing or potential claims or Causes of Action have not yet been pursued by the Debtors or do not fall within the list below, that any such claims or Causes or Action have been waived.  Under the Plan, the Reorganized Debtors retain all rights to pursue any and all claims and Causes of Action to the extent the Reorganized Debtors deem appropriate (under any theory of law or equity, including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases) except as otherwise specifically provided in the Plan, the Final Cash Collateral Order or any other Final Order.  The Debtors' retained claims and Causes of Action, include, without limitation:

- •      Causes of Action, including Avoidance Claims, as defined in the Plan;

- •      Objections to Claims and Interests under the Plan;

- •      Any and all litigation, claims, or Causes of Action of the Debtors and any rights, suits, damages, remedies, or obligations, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, relating to or arising from the acts, omissions, activities, conduct, claims, or Causes of Action listed or described in the Plan, Disclosure Statement, this Exhibit, or the Confirmation Order;

- •      Any other litigation, claims or Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses, assets or operations or otherwise affecting the Debtors, including, without limitation, possible claims or Causes of Action against the following types of parties for the following types of claims:

---

[1]  Capitalized terms used but not defined herein have the meanings given to them in the Plan.

- Possible claims against vendors, customers or suppliers for warranty, indemnity, back charge, set-off issues, overpayment or duplicate payment issues and collections, accounts receivables matters;

- Possible claims against utilities or other persons or parties for wrongful or improper termination of services to the Debtors;

- Possible claims for any breaches or defaults arising from the failure of any persons or parties to fully perform under contracts with the Debtors before the assumption or rejection of the subject contracts;

- Mechanic's lien claims of the Debtors;

- Possible claims for deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, factor or other person;

- Possible claims for damages or other relief against any party arising out of environmental, asbestos and product liability matters;

- Actions against insurance carriers relating to coverage, indemnity or other matters;

- Counterclaims and defenses relating to notes or other obligations;

- Possible claims against local, state and federal taxing authorities (including, without limitation, any claims for refunds of overpayments);

- Contract, tort, or equitable claims which may exist or subsequently arise;

- Any claims of the Debtors arising under Section 362 of the Bankruptcy Code;

- Equitable subordination claims arising under Section 510 of the Bankruptcy Code or other applicable law;

- Any and all claims arising under chapter 5 of the Bankruptcy Code and all similar actions under applicable law, including, but not limited to, preferences under Section 547 of the Bankruptcy Code, turnover Claims arising under Sections 542 or 543 of the Bankruptcy Code, and fraudulent transfers under Section 548 of the Bankruptcy Code; and

- Any and all past, present and future legal and equitable claims and Causes of Action against Global Gaming, LLC, Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Bossier City, LLC, Global Gaming Solutions, LLC (collectively, "Global") and any directors, officers, agents, representatives, mangers, members and shareholders of Global and their affiliated and related entities, including but not limited to, those claims and Causes of Action set forth by the Debtors in the adversary proceeding entitled *Louisiana Riverboat Gaming Partnership, et al. v. Global*

*Gaming Legends, LLC*, Adv. Proc. No. 13-01008 and the counterclaim by the Debtors in the adversary proceeding entitled *Global Gaming Legends, LLC, et al. v. Legends Gaming of Louisiana-1, LLC, et al.*, Adv. Proc. No. 13-01007; and claims and Causes of Action for breach of contract, repudiation of contract, misrepresentation, fraud, bad faith, tortious interference with contract, detrimental reliance, alter ego, and piercing the corporate veil, including but not limited to, any damages allowed by law or equity including compensatory, punitive and anticipated future damages, plus all costs including attorney's fees, court costs, expert witness fees.

•       Any and all past, present and future legal and equitable claims and Causes of Action against Chickasaw Nation of Oklahoma ("Chickasaw") and any directors, officers, agents, representatives, mangers, members and shareholders of Chickasaw and its affiliated and related entities, including but not limited to, claims and Causes of Action for breach of contract, repudiation of contract, misrepresentation, fraud, bad faith, tortious interference with contract, detrimental reliance, alter ego, piercing the corporate veil, and that Global and Chickasaw are a single business enterprise, including but not limited to, any damages allowed by law or equity including compensatory, punitive and anticipated future damages, plus all costs including attorney's fees, court costs, expert witness fees.

**2.      Preservation of All Causes of Action Not Expressly Settled, Released or Transferred**

Unless a claim or Cause of Action against a creditor or other Entity is expressly waived, relinquished, released, compromised, settled or transferred in the Plan, the Final Cash Collateral Order or any other Final Order, the Reorganized Debtors expressly reserve such claim or Cause of Action for later pursuit by the Reorganized Debtors, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order. In addition, the Reorganized Debtors expressly reserve the right to pursue or adopt any claims of the Debtors or the Debtors in Possession, as trustees for or on behalf of the creditors (and any defenses), not so specifically and expressly waived, relinquished, released, compromised, settled or transferred that are alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or codefendants in such lawsuits.

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, to the extent not theretofore waived, relinquished, released, compromised, settled or transferred, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Entity's proof of claim has been objected

to, (c) such Entity's Claim was included in the Debtors' Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.